COMMONWEALTH OF MASSACHUSETTS
UNITED STATES DISTRICT COURT

DOCKET NO. 4:15-CV-40048-TSH

ALFRED MORIN,

    Plaintiff

v.

MARK K. LEAHY, in his official capacity as NORTHBOROUGH CHIEF OF POLICE,

    Defendant

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    Now comes the plaintiff, Alfred Morin, by and through undersigned counsel, and submits his Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment.

Dated: December 18, 2015

Respectfully submitted,

Alfred Morin,
By His Attorney,

/s/ J. Steven Foley
J. Steven Foley
11 Pleasant St #100
Worcester MA 01609
BBO: 685741
508-754-1041
508-739-4051 (fax)
JSteven@attorneyfoley.com

Table of Contents

**PRELIMINARY STATEMENT** ........................................................................................... 1

**STATEMENT OF FACTS** ................................................................................................... 1

**ARGUMENT** ........................................................................................................................ 3

    **STANDARD OF REVIEW** ............................................................................................ 3

    **IMPLICATION OF SECOND AMENDMENT** ............................................................ 4

    **PROHIBITIONS BASED ON CRIMES OF VIOLENCE** ............................................. 5

**CONCLUSION** .................................................................................................................... 8

TABLE OF AUTHORITIES

### Cases

District of Columbia v. Heller, 554 US. 570 (2008) .................................................. 4, 5, 7

Ezell v. City of Chicago, 651 F.3d 684 (7th Cir.2011) ................................................... 3, 6

Georgia-Carry.Org, Inc. v. Georgia, 687 F.3d 1244 (11th Cir.2012) ............................... 4

Heller v. District of Columbia, 670 F.3d 1244 (D.C.Cir.2011) ......................................... 4

Hightower v. City of Boston, 693 F. 3d 61 (1st Cir. 2012) ............................................... 5

National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 700
    F.3d 185 (5th Cir.2012) .............................................................................................. 3, 4

Schrader v. Holder, 704 F.3d 980 (D.C. Cir 2013) ........................................................... 6

United States v. Armstrong, 706 F.3d 1 (1st Cir.2013) ..................................................... 5

United States v. Booker, 644 F.3d 12 (1st Cir. 2011) ............................................... 5, 6, 7, 8

United States v. Chester, 628 F.3d 673 (4th Cir.2010) ..................................................... 3

United States v. Chovan, 735 F.3d 1127 (9th Cir.2013) ................................................... 3

United States v. Greeno, 679 F.3d 510 (6th Cir.2012) ..................................................... 3

United States v. Marzzarella, 614 F.3d 85 (3d Cir.2010) ................................................ 3

United States v. Reese, 627 F.3d 792 (10th Cir.2010) ..................................................... 3

United States v. Rene E., 583 F.3d 8 (1st Cir.2009) ......................................................... 4

United States v. Skoien, 614 F.3d 638 (7th Cir. 2010) ................................................... 5, 6

Woollard v. Gallagher, 712 F.3d 865 (4th Cir.2013) ....................................................... 5

### Statutes

18 U.S.C. § 922(g)(9) ..................................................................................................... 5, 8

M.G.L. c. 140§ 129B(1)(i)(d) ............................................................................................ 4

M.G.L. c. 140§ 129B(1)(ii)(d) ............................................................................................... 4

M.G.L. c. 140§ 131(d)(i)(d) ......................................................................................... 4, 7, 8

M.G.L. c. 140§ 131(d)(ii)(d) ............................................................................................... 4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## PRELIMINARY STATEMENT

The Defendant challenges the constitutionality of a blanket prohibition of any possession of a firearm in Massachusetts by a person who has been convicted of a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed. Massachusetts law prohibits possession of firearms by any person convicted of a felony, crime of violence, or controlled substance violation. A conviction of a weapons violation that is not a felony, not a crime of violence, nor a violation of a controlled substance law is necessarily a *malum prohibitim*, technical violation with no *mens rea* nor element of recklessness.

## STATEMENT OF FACTS

Dr. Morin is a business owner and employs over 45 people through two retail businesses. He received recognition awards and made many contributions to local schools, church organizations, and charitable organizations. SMF 1. He collected and passed on over $19,000 to the Jimmy Fund, over $2,000 to the American Cancer Society, and over $2,000 to the United Way. SMF 1. He served on several teacher and principal search committees as well as the Superintendent's Curriculum Review Committee for his local school systems and was a founding and charter member of the Educational Foundation for Northborough and Southborough Schools. He is an outstanding, responsible United States Citizen. He holds a PhD in Experimental Psychology and has no criminal record, save for the single incident in the District of Columbia during his sixty-nine years. SMF 2, SMF 3.

The plaintiff applied for, and received a license to carry firearms for all lawful purposes in 1985. SMF 4. His habit was to carry a loaded handgun, in a holster, strapped to his ankle. SMF 5. He continued with this habit consistently between 1985 and 2004. SMF 5.

In 2004, the plaintiff visited Washington D.C. SMF 6 .He was under the incorrect belief that his license to carry firearms was good throughout the United States, just like his license to drive an automobile. SMF 7. Because of this incorrect belief, he carried his loaded handgun, in his holster, strapped to his ankle, while visiting Washington D.C. SMF 8.When he approached the entrance to a Smithsonian Museum, he noticed a sign prohibiting weapons. SMF 9. He approached an employee, informed her that he was carrying a handgun, and asked if there was a place he could check the weapon. SMF 9. The security guard instructed Dr. Morin to follow her inside, where he was arrested. SMF 10

A Grand Jury returned a True Bill for the charges of Carrying a Pistol Without a License (Outside Home or Place of Business), in violation of 22 D.C. Code, Section 4504(a)(2001 ed.)), Possession of Unregistered Firearm, in violation of 7 D.C. Code, Section 2502.01 (2001 ed.)), and Unlawful Possession of Ammunition, in violation of 7 D.C. Code, Section 2506.01(3) (2001 ed.)) EX C.

As part of a plea bargain, Dr. Morin pled guilty to the reduced charges of Attempt Carrying a Pistol w/o a License in violation of Title 22 Section 3204(1)(1) and Unregistered Firearms in Violation of Title 6 Section 2376. Dr. Morin was sentenced to a suspended sentence of 60 days on each count, three months of supervised probation, and twenty hours of community service. Dr. Morin completed his sentence without incident. EX B.

In 2008, Dr. Morin submitted an application to the Northborough Police Chief to renew his License to Carry Firearms. The Chief denied Dr. Morin's application, as under Massachusetts Law Chapter 140, Section 131, Dr. Morin is a prohibited person due to a conviction of a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed. EX C.

In 2015, after the decisions in Heller and McDonald, Dr. Morin submitted another application to the Northborough Police Chief to renew his License to Carry Firearms SMF 11.. The Chief denied Dr. Morin's application for the same reason as the previous denial in 2008. SMF 12.

## ARGUMENT

### STANDARD OF REVIEW

When analyzing a constitutional challenge under the Second Amendment, a majority of the courts of appeals have adopted a two-step approach, first set forth by the Third Circuit:

> First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee.... If it does not, our inquiry is complete. If it does, we evaluate the law under some form of meansends scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid.

United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir.2010). The Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, Eleventh, and D.C. Circuits have explicitly adopted this approach. United States v. Chester, 628 F.3d 673, 680 (4th Cir.2010); National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 700 F.3d 185, 194-95 (5th Cir.2012); United States v. Greeno, 679 F.3d 510, 518 (6th Cir.2012); Ezell v. City of Chicago, 651 F.3d 684, 703-04 (7th Cir.2011); United States v. Chovan, 735 F.3d 1127, 1136 (9th Cir.2013); United States v. Reese,

3

627 F.3d 792, 800-01 (10th Cir.2010) <u>Georgia-Carry.Org, Inc. v. Georgia,</u> 687 F.3d 1244, 1260 n. 34 (11th Cir.2012); <u>Heller v. District of Columbia,</u> 670 F.3d 1244, 1252 (D.C.Cir.2011) (Heller II).

The First Circuit has not expressly adopted this approach. However, the cases in which it has directly analyzed Second Amendment issues appear to fall under either the first or second step of the analysis performed by the other circuits. For example, in <u>United States v. Rene E.,</u> 583 F.3d 8 (1st Cir.2009), the court concluded that the federal statute criminalizing firearm possession by juveniles did not violate the Second Amendment because it was one of the "longstanding prohibitions" that Heller did not call into question. 583 F.3d at 16. While <u>Rene E.</u> did not specifically hold that the statute only burdened conduct outside the scope of Second Amendment protection, the analysis it followed was almost identical to those of other circuits when conducting the first step in their Second Amendment analysis. Compare <u>Rene E.,</u> 583 F.3d at 13-16 (surveying nineteenth-century state laws and the founders' attitudes on juvenile handgun possession) with <u>National Rifle Ass'n of Am.,</u> 700 F.3d at 200-204 (surveying founding-era attitudes and nineteenth-century opinion on juvenile firearm possession).

## IMPLICATION OF SECOND AMENDMENT

The lifetime handgun ban imposed by Plaintiff under M.G.L. c. 140§ 131(d)(i)(d), M.G.L. c. 140§ 131(d)(ii)(d), M.G.L. c. 140§ 129B(1)(i)(d), and M.G.L. c. 140§ 129B(1)(ii)(d) implicates the core Second Amendment right to possess a handgun in the Plaintiff's home for defense of hearth and home. Therefore, the present Court should move to the second stage and determine whether the right has been infringed. The court in <u>Heller</u> held that the absolute ban on handgun possession for self-defense in the home "would fail constitutional muster" under "*any* of the standards of scrutiny" applied to the enumerated constitutional rights. District of Columbia

v. Heller, 554 US. 570 (2008) at 628-29 (emphasis added). The Heller Court expressly left for 'future evaluation' the precise level of scrutiny to be applied to laws trenching upon Second Amendment rights." United States v. Booker, 644 F.3d 12,22 (1st Cir. 2011) (quoting Heller, 554 U.S. at 626,634-35). Nevertheless, the Heller Court expressly declined to apply an "interest-balancing" approach.

PROHIBITIONS BASED ON CRIMES OF VIOLENCE

In United States v. Booker, 644 F.3d 12 (1st Cir.2011), and United States v. Armstrong, 706 F.3d 1 (1st Cir.2013), the First Circuit upheld the federal statute criminalizing firearm possession by persons convicted of a misdemeanor crime of domestic violence. In doing so, it found that the statute, although falling within one of the "presumptively lawful" categories of firearm regulation in Heller, required some form of means-ends scrutiny because it was a new categorical limit on the Second Amendment right. *Booker,* 644 F.3d at 25; *Armstrong,* 706 F.3d at 8. In Hightower v. City of Boston, 693 F. 3d 61 (1st Cir. 2012), the court concluded that under any standard of heightened scrutiny, revoking an individual's license to carry a concealed weapon did not violate the Second Amendment when based on an inaccurate firearms-license application. 693 F.3d at 74. Thus, the analysis in *Booker, Armstrong,* and *Hightower* was similar to the analysis performed by other circuits in the second step of their Second Amendment framework. Compare *Hightower,* 693 F.3d at 73-76 (regulation upheld under any standard of heightened means-ends scrutiny) with Woollard v. Gallagher, 712 F.3d 865, 880-81 (4th Cir.2013) (regulation upheld under intermediate scrutiny).

In United States v. Skoien, 614 F.3d 638 (7th Cir. 2010), the Seventh Circuit considered a Second Amendment challenge to prosecution under 18 U.S.C. § 922(g)(9), which prohibits possession of firearms by persons convicted of a domestic-violence misdemeanor. In Skoien, the

5

Court determined that the appropriate level of scrutiny to be applied was a "form of strong showing," because the Second Amendment claim was not being made by a "law-abiding, responsible citizen," the case did not involve the central self-defense component of the right." <u>Ezell v. City of Chicago</u>, 651 F.3d 684,708 (7th Cir. 2011)(citing <u>Skoien,</u> 614 F.3d at 645). In <u>Ezell</u>, however, the Court found that the plaintiffs were "the 'law-abiding, responsible citizens' whose Second Amendment rights are entitled to full solicitude under <u>Heller</u>, and their claim comes much closer to implicating the core of the Second Amendment right . . . suggesting a more rigorous showing than that applied in Skoien should be required, if not quite 'strict scrutiny.'" <u>U.S. v. Skoien</u>, 651 F3d at 708.

In <u>United States v. Booker</u>, 644 F.3d 12,22 (1st Cir. 2011), the First Circuit, like the Seventh Circuit in <u>Skoien</u>, added convicted domestic violence misdemeanants to the list of individuals that could be categorically denied their Second Amendment Rights. The <u>Booker</u> court relied on analysis performed by the <u>Skoien</u> Court and quoted heavily from the <u>Skoien</u> decision. Like the <u>Skoien</u> Court, <u>Booker</u> noted that the criminal defendant appellants in that case "manifestly are not 'law-abiding responsible citizens." <u>United States v. Booker</u>, 644 F.3d at note 17. Immediately after noting the non-law-abiding nature of the criminal defendants in that case, the First Circuit concluded, "as did the Seventh Circuit, that a categorical ban on gun ownership by a class of individuals must be supported by some form of 'strong showing,' necessitating a substantial relationship between the restriction and an important governmental objective." <u>Booker</u> at 25.

In the present case, the Court is presented with a "law-abiding responsible citizen" whose core right to possess a handgun in his home for self-defense is directly affected. See <u>Schrader v. Holder</u>, 704 F.3d 980 (D.C. Cir 2013)(if Appellant had only one conviction for a fist fight forty

6

years ago and no other encounter with the law, "we would hesitate to find Schrader outside the class of 'law abiding, responsible citizens' whose possession of firearms is, under *Heller*, protected by the Second Amendment."). Unlike Schrader, whom the court found to be law-abiding despite a single crime of violence, Dr. Morin never committed a crime of violence, or a crime of recklessness, or a crime involving any sort of intent at all. Dr. Morin honestly believed what he was doing was perfectly legal. He has no other disqualifying criminal convictions. He has lived a successful and productive life and contributed to society. Accordingly, this Honorable Court should analyze M.G.L. c. 140 § 131(d)(i)(d) lifetime handgun ban through "text, history, and tradition" or, at a minimum, as indicated in Ezell, something more rigorous that the scrutiny applied in Skoien or Booker, "if not quite "strict scrutiny". Therefore, the Commonwealth has the burden of establishing at least a strong public interest in its lifetime handgun ban on the Plaintiff, and must establish a close fit between the legislation and its broad application to its citizens to justify such a substantial encumbrance on individual rights.

As applied to Plaintiff in this matter, § 131(d)(i)(d) cannot survive constitutional scrutiny under a "text, history and tradition" test, strict scrutiny, or a "strong showing" review. To deprive Plaintiff of his Second Amendment right, the Commonwealth must rely on the Heller footnotes stating that the core Second Amendment rights should not "be taken to case doubt on longstanding prohibitions on the possession of forearms by felons and the mentally ill. . .," and that these "presumptively lawful regulatory measures" are examples and "does not purport to be exhaustive." U.S. v Booker, 644 F.3d 12, 23 (1st Cir. 2011) citing District of Columbia v. Heller, 554 US. 570, 627 n.26 (2008). As established below, however, Plaintiff does not fall under the felon or violent misdemeanant categories for firearm disentrancement.

7

In the present matter, the Commonwealth has the burden to establish that Plaintiff's non-violent misdemeanor convictions with no *mens rea* places him under the category of "felons" or the "violent misdemeanant" categories to justify the lifetime handgun ban, Because there are no known federal or Massachusetts cases on point, the Court should look to the distinguishable, but instructive discussion in U.S. v. Booker, 644 F.3d 12 (1st Cir. 2011).

In Booker, the First Circuit addressed the constitutionality of federal statute 18 U.S.C. §922(g)(9), a "law that prohibits individuals convicted of a 'misdemeanor crime of domestic violence from possessing, shipping, or receiving firearms." U.S. v. Booker, 644 F.3d at 13. The Booker Court held that an offense with a *mens rea* of recklessness may qualify as a "misdemeanor crime of domestic violence" under § 922(g)(9)., and therefore upheld the prohibition. Here, the Plaintiff violated a strict liability statute, with absolutely no *mens rea* and does not fall under the umbra, or even penumbra, of a violent criminal.

## CONCLUSION

In conclusion, § 131(d)(i)(d) unconstitutionally groups together non-violent misdemeanants, violent misdemeanants, and felons. While prohibitions of felons and those convicted of violent crimes may have historic constitutional bases, no such history or tradition exists for banning non-violent misdemeanants such as the Plaintiff from exercising his inherent Second Amendment rights. Furthermore, the basis for the categorical lifetime handgun ban for non-violent conviction of a strict liability crime somehow related to a particular class of inanimate objects has no relation to a legitimate and defined legislative purpose, and a link between a strict liability violation and violence cannot be established.

Based on the foregoing analysis, Plaintiff's motion for Summary Judgment should be granted, and this Honorable Court should find that M.G.L. c. 140 § § 131(d)(i)(d), 131(d)(ii)(d), 129B(1)(i)(d), and 129B(1)(ii)(d) are unconstitutional for violating the Plaintiff's constitutional right to keep and bear arms.

Dated: December 18, 2015

          Alfred Morin,
          By His Attorney,

          /s/ J. Steven Foley
          J. Steven Foley
          11 Pleasant St #100
          Worcester MA 01609
          BBO: 685741
          508-754-1041
          508-739-4051 (fax)
          JSteven@attorneyfoley.com

## CERTIFICATE OF SERVICE

I, J. Steven Foley, hereby certify that this document filed through the ECF system was served on all counsel of record.

Date: December 18, 2015          /s/ J. Steven Foley
          J. Steven Foley