UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALFRED MORIN,

     Plaintiff,

    v.

MARK K. LEAHY, in his official capacity as
Northborough Chief of Police,

     Defendant,

COMMONWEALTH OF MASSACHUSETTS,

     Intervenor-Defendant.

CIVIL ACTION NO.
4:15-cv-40048

**MEMORANDUM OF THE COMMONWEALTH OF MASSACHUSETTS
IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

MAURA HEALEY
ATTORNEY GENERAL

Julia Kobick, BBO #680194
Assistant Attorney General
Office of the Attorney General
Government Bureau
One Ashburton Place, 20th Floor
Boston, Massachusetts 02108
(617) 963-2559

Date: January 22, 2016

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................... ii

Introduction ......................................................................................................................1

Statutory Background ........................................................................................................1

Factual Background ...........................................................................................................5

Argument ..........................................................................................................................7

I.     Dr. Morin's Second Amendment Challenge to Section 131(d)(ii)(D) Fails........................7

      A.     Section 131(d)(ii)(D) Does Not Implicate the Second Amendment......................8

           1.     The Second Amendment Extends Only to Law-Abiding, Responsible
                 Persons. ....................................................................................................8

           2.     Massachusetts May Prohibit Categories of Persons, Defined by
                 Criminal Convictions, from Possessing Firearms.....................................10

           3.     Section 131(d)(ii)(D) Permissibly Excludes Dr. Morin From
                 Possessing Firearms Because He Is Not a Law-Abiding, Responsible
                 Person......................................................................................................12

      B.     Even If Section 131(d)(ii)(D) Did Implicate the Second Amendment, It Easily
            Withstands Constitutional Scrutiny. ...................................................................12

           1.     Section 131(d)(ii)(D) Is Subject to, At Most, Intermediate Scrutiny
                 Because It Does Not Affect the Interests at the Core of the Second
                 Amendment..............................................................................................12

           2.     Section 131(d)(ii)(D) Must Be Upheld Under Intermediate Scrutiny
                 Because It Is Substantially Related to the Commonwealth's Important
                 Interests in Promoting Public Safety and Preventing Crime. ...................14

II.    Dr. Morin Lacks Standing to Challenge Other Massachusetts Laws Pertaining to
      Firearms Licensing..........................................................................................................20

Conclusion ......................................................................................................................20

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Chardin v. Police Comm'r of Boston*,
465 Mass. 314, 989 N.E.2d 392 (2013) ....................................................2, 3, 4

*Chief of Police of the City of Worcester v. Holden*,
470 Mass. 845, 26 N.E.3d 715 (2015) ................................................ 1-2, 4, 14

*Clark v. Jeter*,
486 U.S. 456 (1988) ...........................................................................................13

*Commonwealth v. Powell*,
459 Mass. 572, 946 N.E.2d 114 (2011) ..............................................................4

*District of Columbia v. Heller*,
554 U.S. 570 (2008) .............................................................7, 8, 9, 11, 12, 13

*Drake v. Filko*,
724 F.3d 426 (3d Cir. 2013) ..............................................................................7

*Dupont v. Chief of Police of Pepperell*,
57 Mass. App. Ct. 690, 786 N.E.2d 396 (2003) ...............................................14

*Ezell v. City of Chicago*,
651 F.3d 684 (7th Cir. 2011) ............................................................................7

*Florida Bar v. Went for It, Inc.*,
515 U.S. 618 (1995) ...........................................................................................15

*Friedman v. Highland Park, Illinois*,
784 F.3d 406 (7th Cir. 2015) ...........................................................................10

*Heller v. District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011) ....................................................................7, 13

*Heller v. District of Columbia*,
801 F.3d 264 (D.C. Cir. 2015) .........................................................................18

*Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*,
452 U.S. 264 (1981) ...........................................................................................14

*Hightower v. City of Boston*,
693 F.3d 61 (1st Cir. 2012) ..............................................................2, 8, 13, 19

*Jackson v. City and Cty. of San Francisco,*
    746 F.3d 953 (9th Cir. 2014) .........................................................................7

*Kachalsky v. Cty. of Westchester,*
    701 F.3d 81 (2d Cir. 2012).........................................................................14

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992).........................................................................20

*MacNutt v. Police Comm'r of Boston,*
    30 Mass. App. Ct. 632, 572 N.E.2d 577 (1991) .........................................................................2

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010).........................................................................7

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, &*
    *Explosives,*
    700 F.3d 185 (5th Cir. 2012) .........................................................................7

*Powell v. Tompkins,*
    783 F.3d 332 (1st Cir. 2015).........................................................................7

*Ruggiero v. Police Comm'r of Boston,*
    18 Mass. App. Ct. 256, 464 N.E.2d 104 (1984) .........................................................................2

*Turner Broadcasting Sys., Inc. v. FCC,*
    512 U.S. 622 (1994).........................................................................13

*United States v. Armstrong,*
    706 F.3d 1 (1st Cir. 2013).........................................................................11, 16

*United States v. Barton,*
    633 F.3d 168 (3d Cir. 2011).........................................................................10, 11, 12

*United States v. Booker,*
    644 F.3d 12 (1st Cir. 2011).........................................................................10, 11, 12, 13

*United States v. Carpio-Leon,*
    701 F.3d 974 (4th Cir. 2012) .........................................................................9

*United States v. Carter,*
    752 F.3d 8 (1st Cir. 2014).........................................................................11, 16

*United States v. Chester,*
    628 F.3d 673 (4th Cir. 2010) .........................................................................13

*United States v. Chovan*,
    735 F.3d 1127 (9th Cir. 2013) ...................................................................11, 13

*United States v. Greeno*,
    679 F.3d 510 (6th Cir. 2012) .......................................................................7, 12

*United States v. Moore*,
    666 F.3d 313 (4th Cir. 2012) ..............................................................................9

*United States v. Pruess*,
    703 F.3d 242 (4th Cir. 2012) .......................................................................8, 10

*United States v. Reese*,
    627 F.3d 792 (10th Cir. 2010) .....................................................................7, 11

*United States v. Rene E.*,
    583 F.3d 8 (1st Cir. 2009)..................................................................................9

*United States v. Rozier*,
    598 F.3d 768 (11th Cir. 2010) ........................................................................10

*United States v. Salerno*,
    481 U.S. 739 (1987)........................................................................................14

*United States v. Scroggins*,
    599 F.3d 433 (5th Cir. 2010) ..........................................................................11

*United States v. Skoien*,
    614 F.3d 638 (7th Cir. 2010) (en banc) ..............................................9, 10, 11

*United States v. Staten*,
    666 F.3d 154 (4th Cir. 2011) .....................................................................12, 13

*United States v. Torres–Rosario*,
    658 F.3d 110 (1st Cir. 2011).....................................................................10, 17

*United States v. Vongxay*,
    594 F.3d 1111 (9th Cir. 2010) ........................................................................10

*United States v. White*,
    593 F.3d 1199 (11th Cir. 2010) ......................................................................11

*United States v. Yancey*,
    621 F.3d 68 (7th Cir. 2010) ...............................................................................9

*Woollard v. Gallagher,*
        712 F.3d 865 (4th Cir. 2013) ..................................................................................7, 14

## **Statutes and Municipal Ordinances**

18 U.S.C. § 922(g)(1) ..................................................................................................10, 11

18 U.S.C. § 922(g)(9) ........................................................................................................11

18 U.S.C. § 930(a) .............................................................................................................18

18 U.S.C. § 930(e)(1) .........................................................................................................18

Conn. Gen. Stat. § 29–35 ...................................................................................................17

D.C. Code § 6–2376 (2004) .................................................................................................6

D.C. Code § 7–2507.06 .........................................................................................................6

D.C. Code § 22–1803 .............................................................................................................6

D.C. Code § 22–3204(a)(1) (2004) .......................................................................................6

D.C. Code § 22–4504(a)(1) ...................................................................................................6

G.L. c. 140, § 121 ..................................................................................................................2

G.L. c. 140, § 129 ................................................................................................................18

G.L. c. 140, § 129B(1) ...........................................................................................................4

G.L. c. 140, § 129B(1)(i)(D) ...............................................................................................20

G.L. c. 140, § 129B(1)(ii)(D) ..............................................................................................20

G.L. c. 140, § 129B(1½)(a) ...................................................................................................4

G.L. c. 140, § 129B(1½)(b) ...................................................................................................4

G.L. c. 140, § 129B(1½)(c) ...................................................................................................5

G.L. c. 140, § 129B(4) ...........................................................................................................5

G.L. c. 140, § 129B(9) ...........................................................................................................4

G.L. c. 140, § 129D ........................................................................................................6

G.L. c. 140, § 131(a) ....................................................................................................2, 4

G.L. c. 140, § 131(b) .................................................................................................2, 3, 4

G.L. c. 140, § 131(d) ..........................................................................................2, 3, 4, 14

G.L. c. 140, § 131(d)(i)(D) ........................................................................................4, 20

G.L. c. 140, § 131(d)(ii)(D) ....................................................................................... *passim*

G.L. c. 140, § 131(f) ......................................................................................................5

G.L. c. 140, § 131(h) ....................................................................................................18

G.L. c. 140, § 131(i) ......................................................................................................4

Mass. St. 2014, c. 284 § 46 ...........................................................................................2

Mass. St. 2014, c. 284 § 47 ...........................................................................................2

Mass. St. 2014, c. 284 § 111 .........................................................................................2

Md. Laws § 4–203(a) ...................................................................................................17

N.J. Stat. Ann. § 2C:39–5(b) ......................................................................................17

N.Y. Penal Law, § 265.01–b ................................................................................. 17-18

## Rules and Regulations

Fed. R. Civ. P. 56(c)(1)(A) ..........................................................................................19

U.S. District of Massachusetts Local Rule 56.1 ........................................................19

## Miscellaneous

Bernard Schwarz, 2 THE BILL OF RIGHTS: A DOCUMENTARY HISTORY
(1971) ....................................................................................................................9

Bureau of Justice Statistics, U.S. Dep't of Justice, Fact Sheet: *Profile of
Nonviolent Offenders Exiting State Prisons* (Oct. 2004) ....................................16

Bureau of Justice Statistics, U.S. Dep't of Justice, *Recidivism of Prisoners Released in 30 States in 2005: Patterns from 2005 to 2010* (Apr. 2014) ...................................................................................................16

C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 HARV. J.L. & PUB. POLICY 695 (2009) .................................................................. 9-10

Garen J. Wintemute et al., *Prior Misdemeanor Convictions as a Risk Factor for Later Violent and Firearm-Related Criminal Activity Among Authorized Purchasers of Handguns*, 280 J. AM. MED. ASS'N 2083 (1998) ...................................................................................15, 16

Mona A. Wright et al., *Felonious or Violent Criminal Activity That Prohibits Gun Ownership Among Prior Purchasers of Handguns: Incidence and Risk Factors*, 69 J. TRAUMA 948 (2010) ....................................................16

Stephen P. Holbrook, THE FOUNDER'S SECOND AMENDMENT (2008)............................................9

U.S. Govt. Accountability Office, STATES' LAWS AND REQUIREMENTS FOR CONCEALED CARRY PERMITS VARY ACROSS THE NATION (July 2012) ...................................................................................................17

## INTRODUCTION

Massachusetts law disqualifies individuals convicted of "a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed" from obtaining a license to carry concealed firearms. G.L. c. 140, § 131(d)(ii)(D). The plaintiff in this case, Dr. Alfred Morin, was convicted in 2004 in the District of Columbia of possession of an unregistered firearm and attempted carrying of a pistol without a license, after he sought to enter a federal government building with a loaded pistol. The Chief of the Northborough Police subsequently denied Dr. Morin's application to renew his license to carry pursuant to Section 131(d)(ii)(D), because Dr. Morin's convictions were for violations of laws regulating the possession of weapons, and they authorized terms of imprisonment.

In this lawsuit, Dr. Morin contends that G.L. c. 140, § 131(d)(ii)(D) violates the Second Amendment, as applied to him, by making him ineligible for a license to carry concealed weapons. That claim fails. Application of Section 131(d)(ii)(D) to Dr. Morin does not implicate the Second Amendment because Dr. Morin is not among the "law-abiding, responsible citizens" the Second Amendment protects. And even if Dr. Morin's claim did implicate the Second Amendment, Section 131(d)(ii)(D) easily survives constitutional scrutiny because it is substantially related to the Commonwealth's important interests in preventing crime and promoting public safety. This Court should accordingly grant judgment in favor of the Commonwealth and deny Dr. Morin's motion for summary judgment.

## STATUTORY BACKGROUND

The purpose of firearms control legislation in Massachusetts "is to 'limit access to deadly weapons by irresponsible persons.'" *Chief of Police of the City of Worcester v. Holden*, 470

Mass. 845, 853, 26 N.E.3d 715, 723 (2015) (quoting *Ruggiero v. Police Comm'r of Boston*, 18 Mass. App. Ct. 256, 258, 464 N.E.2d 104, 106 (1984)). "Among the principal measures adopted in furtherance of that goal are the provisions of G.L. c. 140, § 131, governing the licensing of persons to carry firearms." *MacNutt v. Police Comm'r of Boston*, 30 Mass. App. Ct. 632, 635, 572 N.E.2d 577, 579 (1991).

Massachusetts law establishes two categories of licenses for the carrying and possession of firearms: the Class A license and the Class B license. G.L. c. 140, § 131(a)–(b); *see Chardin v. Police Comm'r of Boston*, 465 Mass. 314, 315–17, 989 N.E.2d 392, 395 (2013) (describing statutory framework); *Hightower v. City of Boston*, 693 F.3d 61, 65–67 (1st Cir. 2012) (same).[1] Each form of license is issued by a "licensing authority," defined as either "the chief of police or the board or officer having control of the police in a city or town, or persons authorized by them," G.L. c. 140, § 121, or the colonel of the State police, *id.* § 131(d).

Holders of Class A and B licenses may possess and carry "firearms," "rifles," or "shotguns" in their homes or in public. *Id.* § 131(a), (b).[2] Class A license holders may also (1) "carry or possess a loaded firearm in a concealed manner in any public place or way," and (2) obtain, possess, or carry any "large capacity" firearm, rifle, or shotgun. *Id.*[3] Class B license

---

[1] In 2014, the Legislature enacted "An act relative to the reduction of gun violence," which, effective January 1, 2021, revised G.L. c. 140, § 131(d) to provide for one type of license to carry, rather than Class A and Class B licenses. *See* Mass. St. 2014, c. 284 §§ 46, 47, 111.

[2] A "firearm" is, in general, a "pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged" and with a barrel less than 16 inches. G.L. c. 140, § 121. A "rifle" is "a weapon having a rifled bore with a barrel length equal to or greater than 16 inches"; a "shotgun" is "a weapon having a smooth bore with a barrel length equal to or greater than 18 inches with an overall length equal to or greater than 26 inches. . . ." *Id.*

[3] A "large capacity weapon" is, in general, "any firearm, rifle or shotgun" that is "semiautomatic with a fixed large capacity feeding device . . . or capable of accepting . . . any detachable large capacity feeding device." G.L. c. 140, § 121.

holders may not carry or possess a loaded and concealed firearm in public, but may openly possess and carry in public "large capacity shotguns and rifles" and "non-large capacity firearms." *Id.* § 131(b).

A person seeking a Class A or B license must file an application with a licensing authority, which in turn must determine whether the applicant is disqualified by statute from obtaining the license. *Id.* § 131(d); *Chardin*, 989 N.E.2d at 395. Certain categories of applicants are ineligible for a license to carry, including (1) persons who have been convicted of any felony; any misdemeanor punishable by more than two years' imprisonment; certain violent crimes; any violation of any law regulating the use, possession, or sale of controlled substances; or any misdemeanor crime of domestic violence; (2) persons who have been committed to a hospital or institution for mental illness or for substance or alcohol abuse disorder, unless, in certain circumstances, a court has granted the person's petition for relief or the person has a physician attest that he or she is no longer disabled by the illness; (3) persons who are subject to an order from the probate court appointing a guardian on their behalf due to mental incapacitation, unless a court has granted the person's petition for relief from that order; (4) persons less than 21 years old; (5) non-citizens who do not maintain lawful permanent residency; (6) persons currently the subject of an abuse prevention restraining order; (7) persons subject to an outstanding arrest warrant; (8) persons who have been dishonorably discharged from the United States armed forces; (9) fugitives from justice; and (10) persons who have renounced their United States citizenship. G.L. c. 140, § 131(d)(i)–(x). Relevant here, the statute also disqualifies applicants who have been convicted, "in a court of the Commonwealth" or "in any other state or federal jurisdiction," of "a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term

of imprisonment may be imposed." G.L. c. 140, §§ 131(d)(i)(D), (d)(ii)(D).

If an applicant is not disqualified, the licensing authority may issue a license to carry so long as the applicant is not "unsuitable" to be licensed. *Id.* § 131(d). Suitability review "allows licensing authorities to keep firearms out of the hands of person who are not categorically disqualified, . . . but who nevertheless pose a palpable risk that they would not use a firearm responsibly if allowed to carry in public." *Holden*, 26 N.E.3d at 724. The licensing authority may, in its discretion, issue the license to carry subject to restrictions. *Id.* §§ 131(a), (b). Applicants aggrieved by the denial of a license to carry are entitled to judicial review in state court. *Id.* §§ 131(d), (f).

A licensing authority may separately issue firearm identification ("FID") cards, which are more limited than a Class A or B license. An FID card allows the holder to possess shotguns and rifles, and to "possess a firearm within the holder's residence or place of business, but not to carry it to or in any other place." *Commonwealth v. Powell*, 459 Mass. 572, 587, 946 N.E.2d 114, 128 (2011); *see also Chardin*, 989 N.E.2d at 394 n. 5. To obtain an FID card, a person must submit an application to a licensing authority, which determines whether the applicant is disqualified based on a prior conviction or another factor enumerated in the statute. G.L. c. 140, § 129B(1). In general, the categories of persons disqualified from obtaining an FID card align with the categories of persons disqualified from obtaining a license to carry. *See id.* Although there is generally no suitability determination prior to issuance of an FID card, the licensing authority may file a petition in district court claiming that an applicant is unsuitable. *Id.* § 129(B)(1½)(a)–(b).

Unless revoked or suspended, licenses to carry and FID cards must be renewed every six years. *Id.* §§ 129B(9); 131(i). Licenses to carry and FID cards must "be revoked or suspended by

the licensing authority . . . upon the occurrence of any event that would have disqualified the holder from being issued such license or from having such license renewed." *Id.* §§ 129B(4); 131(f). A person's license to carry or FID card may also be revoked "if it appears that the holder is no longer a suitable person to possess such license." *Id.* § 131(f); *see also id.* § 129B(1½)(c).

## FACTUAL BACKGROUND

Dr. Morin was issued a license to carry in Massachusetts in 1985. Deft's Ex. A, ¶ 2. He held that license until it expired in February 2008. Deft's Ex. B, at 1. On February 17, 2008, Dr. Morin applied to renew his Class A license with the Northborough Police Department. *Id.* at 3. The renewal application form asked, among other things, whether Dr. Morin had, "in any state or federal jurisdiction," been convicted of "a violation of any law regulating the use, possession, ownership, sale, transfer, rental, receipt or transportation of weapons for which a term of imprisonment may be imposed." *Id.* at 2. Dr. Morin falsely answered "no." *Id.*

Following standard practice, the Northborough Police Department then ran a fingerprint check on Dr. Morin. *See* Deft's Ex. C. That fingerprint check revealed that Dr. Morin had in fact been convicted in the District of Columbia in October 2004 for violating two laws regulating the possession of weapons. *Id.* Dr. Morin had driven from his home in Massachusetts to Washington, D.C. with a Colt Pocket Lite pistol, loaded with five rounds of ammunition. Deft's Ex. A, ¶¶ 5–6. At the time of his trip, Dr. Morin was only licensed to carry a firearm in Massachusetts, not in any of the states he passed through on the way to Washington D.C. *Id.* ¶¶ 2–3. Once in Washington, Dr. Morin brought his pistol to the American Museum of Natural History, part of the federal Smithsonian Institution. Deft's Ex. D, at 4. Upon noticing metal detectors at the entrance of the building, Dr. Morin asked a security guard to check his loaded pistol. *Id.*; Deft's Ex. A, ¶ 7. The security guard notified the police, and Dr. Morin was arrested and charged with

carrying a pistol without a license ("CPWL"), possession of unregistered ammunition, and possession of an unregistered firearm. Deft's Ex. A, ¶ 8.

Dr. Morin pleaded guilty to attempted CPWL, in violation of D.C. Code §§ 22–3204(a)(1) (2004)[4] and 22–1803 (2004), and possession of an unregistered firearm, in violation of D.C. Code § 6–2376 (2004).[5] Deft's Ex. E. The CPWL count carried a maximum sentence of five years in prison, *see* D.C. Code § 22–3204(a)(1) (2004), but because Dr. Morin had pleaded guilty to an attempt, his maximum sentence was reduced to 180 days pursuant to D.C. Code § 22–1803. The maximum sentence for the possession of an unregistered firearm count was 1 year. *See* D.C. Code § 6–2376 (2004). Dr. Morin was sentenced to 60 days in prison on each count, to run concurrently, as well as three months' supervised probation and 20 hours of community service. Deft's Ex. E. Because of these convictions, which qualified as "violation[s] of . . . law[s] regulating the . . . possession . . . of weapons or ammunition for which a term of imprisonment may be imposed" under G.L. c. 140, § 131(d)(ii)(D), the Chief of the Northborough Police Department denied Dr. Morin's application to renew his Class A license to carry concealed firearms. Deft's Ex. F. The Chief also ordered Dr. Morin to surrender any firearms he possessed, in accordance with G.L. c. 140, § 129D. Deft's Ex. F.

In 2015, Dr. Morin submitted a new application for a Class A license to carry firearms. *See* Deft's Ex. D. This time, when asked if he had ever been convicted of a "violation of . . . a law regulating the . . . possession . . . of weapons or ammunition for which a term of imprisonment may be imposed," Dr. Morin answered yes. *Id.* at 2. Because of Dr. Morin's prior convictions, the Chief of the Northborough Police Department once again denied his application for a license to carry. Deft's Ex. G.

---

[4] This provision has been renumbered and is now codified at D.C. Code § 22–4504(a)(1).

[5] This provision has been renumbered and is now codified at D.C. Code § 7–2507.06.

**ARGUMENT**

**I.     Dr. Morin's Second Amendment Challenge to Section 131(d)(ii)(D) Fails.**

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Supreme Court held that the Second Amendment secures a limited right, incorporated against the States, for law-abiding, responsible citizens to possess a firearm in the home for self-defense. Since *Heller*, most courts of appeals have adopted a two-step framework for assessing Second Amendment claims. *See Powell v. Tompkins*, 783 F.3d 332, 347 n. 9 (1st Cir. 2015). In general, these courts "first consider whether the challenged law imposes a burden on conduct that falls within the scope of the Second Amendment's guarantee as historically understood, and if so, courts next determine the appropriate form of judicial scrutiny." *Id.* (citing *Jackson v. City and Cty. of San Francisco*, 746 F.3d 953, 962–63 (9th Cir. 2014); *Drake v. Filko*, 724 F.3d 426, 429 (3d Cir. 2013); *Woollard v. Gallagher*, 712 F.3d 865, 874–75 (4th Cir. 2013); *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 194 (5th Cir. 2012); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012); *Heller v. District of Columbia*, 670 F.3d 1244, 1252 (D.C. Cir. 2011) (*Heller II*); *Ezell v. City of Chicago*, 651 F.3d 684, 701–04 (7th Cir. 2011); *United States v. Reese*, 627 F.3d 792, 800–01 (10th Cir. 2010)). Although the First Circuit has not expressly adopted this framework, *see Powell*, 783 F.3d at 347 n. 9, both parties here agree that it provides a helpful method for analyzing Dr. Morin's claim. *See* Pltf's Br. at 4.

Dr. Morin's Second Amendment claim fails under both steps of the analysis. Because the Second Amendment extends only to "law-abiding, responsible citizens," it does not cover persons such as Dr. Morin who have been convicted of firearms-related offenses that are punishable by a term of imprisonment. Such persons are plainly not law-abiding, as they are convicted criminals. Nor are they responsible with firearms, for they have shown themselves to

7

be unable to comply with laws designed to promote firearms safety. And even if the class of persons disqualified by Section 131(d)(ii)(D) could claim Second Amendment protection, their claims would be evaluated under, at most, intermediate scrutiny. Under that standard of review, Section 131(d)(ii)(D) would easily pass constitutional scrutiny because it is substantially related to the Commonwealth's important interests in promoting public safety and preventing crime.

**A.   Section 131(d)(ii)(D) Does Not Implicate the Second Amendment.**

1.   The Second Amendment Extends Only to Law-Abiding, Responsible Persons.

In *Heller*, the Supreme Court emphasized that while the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," the right "secured by the Second Amendment is not unlimited." 554 U.S. at 626, 635. Indeed, *Heller* made clear that many laws restricting the possession of firearms are "presumptively lawful." *Id.* at 626–27 n. 26. Those presumptively lawful measures include "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* They also include laws that regulate the carrying of concealed weapons. *See Hightower*, 693 F.3d at 74–75 ("Licensing of the carrying of concealed weapons is presumptively lawful."). And this list of presumptively lawful regulatory measures only served as "examples," *Heller* said; the "list [did] not purport to be exhaustive." 554 U.S. at 627 n. 26.

Since *Heller*, courts of appeals have concluded that Second Amendment protections do not extend to certain classes of persons that are not "law-abiding, responsible citizens." *See, e.g.*, *United States v. Pruess*, 703 F.3d 242, 245–47 (4th Cir. 2012) (defendant was not protected by the Second Amendment because he "undoubtedly flunks the 'law-abiding responsible citizen'

requirement" (quoting *United States v. Moore*, 666 F.3d 313, 320 (4th Cir. 2012))); *United States v. Rene E.*, 583 F.3d 8, 15 (1st Cir. 2009) (law prohibiting juveniles from possession firearms does not implicate Second Amendment). As the First Circuit explained, the Second Amendment was understood "in the Founding era . . . as a civic right. Such a right was not something that all persons could claim, but was limited to those members of the polity who were deemed capable of exercising it in a virtuous manner." *Rene E.*, 583 F.3d at 15 (quoting Saul Cornell, *"Don't Know Much About History": The Current Crisis in Second Amendment Scholarship*, 29 N. KY. L. REV. 657, 679 (2002)). "[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" *United States v. Carpio-Leon*, 701 F.3d 974, 979–80 (4th Cir. 2012) (quoting *United States v. Yancey*, 621 F.3d 68, 684–85 (7th Cir. 2010)).

This understanding of the Second Amendment—as a right limited to "law-abiding, responsible citizens"—is supported by historical sources discussed in *Heller*. One of the sources, identified by *Heller* as a "highly influential" "precurso[r]" to the Second Amendment, was the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents. 554 U.S. at 604. This report "asserted that citizens have a personal right to bear arms 'unless for crimes committed, or real danger of public injury.'" *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (quoting Bernard Schwarz, 2 THE BILL OF RIGHTS: A DOCUMENTARY HISTORY 662, 665 (1971)). Similarly, "[m]any of the states, whose own constitutions entitled their citizens to be armed, did not extend [the personal right to bear arms] to persons convicted of crime." *Id.* (citing Stephen P. Holbrook, THE FOUNDER'S SECOND AMENDMENT 273 (2008) (this limitation on the scope of the right was understood in the eighteenth century even though it was not expressly stated in the constitutional text); C. Kevin

Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 HARV. J.L. & PUB. POLICY 695, 700–13

(2009) (surveying the history of state laws limiting convicts' entitlement to possess firearms)).

2.   <u>Massachusetts May Prohibit Categories of Persons, Defined by Criminal Convictions, from Possessing Firearms.</u>

In addition to recognizing the Second Amendment as protecting only "law-abiding,

responsible citizens," courts of appeals have also concluded that categorical limitations on the

possession of firearms are constitutionally permissible. The First Circuit has held unambiguously

that "'statutory prohibitions on the possession of weapons by some persons are proper.'" *United*

*States v. Booker*, 644 F.3d 12, 23 (1st Cir. 2011) (quoting *Skoien*, 614 F.3d at 640). In other

words, "the Second Amendment permits categorical regulation of gun possession by classes of

persons." *Booker*, 644 F.3d at 23; *accord Friedman v. Highland Park, Illinois*, 784 F.3d 406, 410

(7th Cir. 2015) ("at least some categorical limits . . . are proper, and . . . they need not mirror

restrictions that were on the books in 1791"); *Skoien*, 614 F.3d at 641 ("some categorical

disqualifications are permissible"). Restrictions on the right to possess a firearm need not "be

imposed only on an individualized, case-by-case basis." *Booker*, 644 F.3d at 23.

Applying this principle, courts of appeals have uniformly rejected Second Amendment

challenges to 18 U.S.C. § 922(g)(1), which prohibits all convicted felons, even those convicted

of non-violent felonies, from possessing firearms for life. *See, e.g.*, *Pruess*, 703 F.3d at 247 ("We

now join our sister circuits in holding that application of the felon-in-possession prohibition to

allegedly non-violent felons like Pruess does not violate the Second Amendment."); *United*

*States v. Torres–Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) (rejecting challenge to § 922(g)(1)

by defendant with "no prior convictions for any violent felony"); *United States v. Barton*, 633

F.3d 168, 174 (3d Cir. 2011) (same); *United States v. Rozier*, 598 F.3d 768, 769 & n. 1 (11th Cir.

2010) (same); *United States v. Vongxay*, 594 F.3d 1111, 1113–14 (9th Cir. 2010) (same); *see*

10

*also Skoien*, 614 F.3d at 640 ("[E]xtension of the [§ 922(g)(1)] disqualification to non-violent felons (embezzlers and tax evaders, for example) is presumptively constitutional."); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) ("Prior to *Heller*, this circuit had already recognized an individual right to bear arms, and had determined that criminal prohibitions on felons (violent or nonviolent) possessing firearms did not violate that right.").

Courts of appeals have likewise upheld laws that categorically disqualify persons convicted of misdemeanors from possession of firearms. For example, courts frequently reject Second Amendment challenges to 18 U.S.C. § 922(g)(9), which disqualifies domestic violence misdemeanants from possessing firearms. *See, e.g.*, *United States v. Chovan*, 735 F.3d 1127, 1140–41 (9th Cir. 2013); *Booker*, 644 F.3d at 22–26; *Skoien*, 614 F.3d at 639–45; *United States v. White*, 593 F.3d 1199, 1205–06 (11th Cir. 2010). Such claims are rejected even when the underlying misdemeanor assertedly involved non-violent conduct. In fact, the First Circuit has twice rejected the claim that § 922(g)(9) is unconstitutional as applied when "the relevant misdemeanor conviction is not based on violent behavior." *United States v. Armstrong*, 706 F.3d 1, 7–8 (1st Cir. 2013), *vacated and remanded on other grounds*, 134 S. Ct. 1759 (2014); *see also United States v. Carter*, 752 F.3d 8, 12 (1st Cir. 2014) (rejecting the argument that "§ 922(g)(9) 'deprives a significant population of non-violent offenders from exercising a core constitutional right' protected by the Second Amendment").

There are three key takeaways from these precedents. First, a lifetime disqualification from firearms possession triggered by a conviction for a non-violent felony is compatible with the Second Amendment. Second, a lifetime disqualification from firearms possession triggered by certain misdemeanor convictions may also be compatible with the Second Amendment. Third, even if a plaintiff claims that his underlying conviction is for a non-violent misdemeanor,

a lifetime disqualification may likewise be compatible with the Second Amendment.

    3.   Section 131(d)(ii)(D) Permissibly Excludes Dr. Morin From Possessing Firearms Because He Is Not a Law-Abiding, Responsible Person.

Section 131(d)(ii)(D) defines a class of persons—persons who have been convicted of a weapons- or ammunition-related offense, for which a term of imprisonment may be imposed— that, the Legislature has determined, are ineligible to obtain a license to carry firearms in Massachusetts. The Second Amendment does not protect persons who fall into this category because such persons do not qualify as "law-abiding, responsible citizens." *See Heller*, 554 U.S. at 635. By definition, these persons are not law-abiding, as they have been convicted of a crime, whether a felony or a misdemeanor. Moreover, these persons are not responsible to handle firearms, as they have shown themselves to be unable to comply with laws regulating the possession of firearms. Accordingly, Section 131(d)(ii)(D) covers a narrow class of persons who, historically understood, have demonstrated an inability to handle firearms in a virtuous manner. As applied to this class, Section 131(d)(ii)(D) therefore does not implicate the Second Amendment, and Dr. Morin's as-applied challenge to Section 131(d)(ii)(D) fails.

**B.  Even If Section 131(d)(ii)(D) Did Implicate the Second Amendment, It Easily Withstands Constitutional Scrutiny.**

    1.   Section 131(d)(ii)(D) Is Subject to, At Most, Intermediate Scrutiny Because It Does Not Affect the Interests at the Core of the Second Amendment.

Even if Section 131(d)(ii)(D) did implicate the Second Amendment, and therefore warrant heightened scrutiny, the statute easily passes constitutional muster. The courts of appeals have widely concluded that the "core" right of the Second Amendment is, as *Heller* said, "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *See, e.g.*, *Booker*, 644 F.3d at 25 n. 17; *Greeno*, 679 F.3d at 517; *Barton*, 633 F.3d at 170; *United States v. Staten*, 666 F.3d 154, 158 (4th Cir. 2011); *Reese*, 627 F.3d at 800. Laws and regulations that

affect other aspects of firearms possession, such as the licensing of concealed weapons, are "distinct from this core interest emphasized in *Heller*." *Hightower*, 693 F.3d at 72. Here, Section 131(d)(ii)(D) falls well outside the core of the Second Amendment because it involves the licensing of concealed weapons, which is presumptively lawful, *see Hightower*, 693 F.3d at 74–75, and because it only restricts certain criminals convicted of weapons- or ammunition-related offenses from firearms possession. *See supra*, at 12.

Because Section 131(d)(ii)(D) affects interests outside the core of the Second Amendment, its application to Dr. Morin should be reviewed under, at most, intermediate scrutiny. Many courts of appeals have concluded that "[t]he level of scrutiny applicable under the Second Amendment 'depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right.'" *Heller II*, 670 F.3d at 1257 (quoting *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010)). Laws like Section 131(d)(ii)(D) that prohibit persons with criminal convictions from possessing firearms are accordingly reviewed under intermediate, rather than strict, scrutiny. *See, e.g.*, *Chovan*, 735 F.3d at 1138; *Staten*, 666 F.3d at 159; *Booker*, 644 F.3d at 25; *Chester*, 628 F.3d at 683.[6]

In applying intermediate scrutiny, a court must ask whether the challenged enactment is "substantially related to an important governmental objective." *Clark v. Jeter*, 486 U.S. 456, 461 (1988). The test requires "substantial deference to the predictive judgments" of the regulator. *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994). To survive intermediate scrutiny, the challenged regulation must only be "reasonably adapted" to the governmental

---

[6] The strict scrutiny standard of review, by contrast, would conflict with *Heller*'s approval of "presumptively lawful" enactments, like laws prohibiting the possession of firearms by felons and the mentally ill. 554 U.S. at 626–27 & n.26. Because strict scrutiny would threaten to invalidate all of these regulatory measures, it does not apply to laws that assertedly burden non-core Second Amendment rights.

objective, *Woollard*, 712 F.3d at 876; the fit between the regulation and the government's interest need not be "perfect." *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 97 (2d Cir. 2012).

> 2.  Section 131(d)(ii)(D) Must Be Upheld Under Intermediate Scrutiny Because It Is Substantially Related to the Commonwealth's Important Interests in Promoting Public Safety and Preventing Crime.

Dr. Morin's disqualification under Section 131(d)(ii)(D) easily withstands intermediate scrutiny. The Commonwealth's interests in enacting Section 131(d) were to prevent crime and promote public safety by "limit[ing] access to deadly weapons by irresponsible persons." *Holden*, 26 N.E.3d at 723. Massachusetts courts have deemed the Commonwealth's firearms licensing scheme to be "of the utmost importance," because those laws "governing who may lawfully carry a firearm directly affec[t] the physical safety of the citizenry." *Dupont v. Chief of Police of Pepperell*, 57 Mass. App. Ct. 690, 693, 786 N.E.2d 396, 399 (2003). The Commonwealth's interests are unquestionably important, and Dr. Morin does not argue otherwise. *See United States v. Salerno*, 481 U.S. 739, 750 (1987) ("[T]he Government's general interest in preventing crime is compelling."); *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 300 (1981) ("Protection of the health and safety of the public is a paramount governmental interest."); *Kachalsky*, 701 F.3d at 97 ("New York has substantial, indeed compelling, governmental interests in public safety and crime prevention.").

Section 131(d)(ii)(D) is substantially related to these governmental interests. First, the nature of the disqualification in Section 131(d)(ii)(D) demonstrates that it is substantially related to preventing crime and promoting public safety. Section 131(d)(ii)(D) does not disqualify everyone who has been convicted of a weapons- or ammunition-related offense, but rather disqualifies only those persons convicted of a weapons- or ammunition-related offense "for which a term of imprisonment may be imposed." G.L. c. 140, § 131(d)(ii)(D). In specifying that

14

the conviction must be punishable by a term in prison, Section 131(d)(ii)(D) ensures that criminals with serious weapons- and ammunition-related convictions will not possess firearms in Massachusetts. These persons have already demonstrated an inability to obey the firearms laws, and, for that reason, the Commonwealth can reasonably conclude they are at risk for future criminal conduct.

Second, a robust body of empirical evidence demonstrates that the class of persons regulated by Section 131(d)(ii)(D) is significantly more likely to commit crime in the future than are persons without convictions for weapons-related offenses.[7] In one study, researchers found that "handgun purchasers with prior misdemeanor convictions had substantially higher rates of criminal activity after handgun purchase than did purchasers with no prior criminal history." Def't's Ex. H (Garen J. Wintemute et al., *Prior Misdemeanor Convictions as a Risk Factor for Later Violent and Firearm-Related Criminal Activity Among Authorized Purchasers of Handguns*, 280 J. AM. MED. ASS'N 2083, 2086 (1998)). Specifically, purchasers with 1 prior misdemeanor conviction for non-violent conduct that did *not* involve firearms were 5.9 times more likely than persons without a prior conviction to commit future criminal offenses. *Id.*, Table 5. Most relevant to Section 131(d)(ii)(D), purchasers with 1 prior misdemeanor conviction for non-violent conduct that *did* involve firearms were <u>6.4 times more likely</u> than persons without prior convictions to commit future criminal offenses. *Id.* That class of persons was also 7.7 times more likely to commit a nonviolent firearms-related offense and 4.4 times more likely to commit a violent offense in the future. *Id.* The study concluded that "handgun purchasers with prior convictions for misdemeanor offenses, regardless of the nature of those offenses," are at

---

[7] When a statute is reviewed under intermediate scrutiny, the government may justify the statute "by reference to studies and anecdotes . . . or even . . . based solely on history, consensus, and simple common sense." *Florida Bar v. Went for It, Inc.*, 515 U.S. 618, 628 (1995) (internal quotation marks and citations omitted).

"high risk" for future criminal activity. *Id.* at 2087.

Other research has produced similar findings. One recent study concluded that persons with a prior misdemeanor conviction were 5 times more likely than persons without a conviction to commit future crimes that would disqualify them from firearms possession under state and federal law. *See* Deft's Ex. I (Mona A. Wright et al., *Felonious or Violent Criminal Activity That Prohibits Gun Ownership Among Prior Purchasers of Handguns: Incidence and Risk Factors*, 69 J. TRAUMA 948, Table 2 (2010)). A separate study of 210,886 nonviolent offenders released from prison demonstrated that approximately 1 in 5 offenders was rearrested for a violent offense within three years of his or her release. *See* Deft's Ex. J (Bureau of Justice Statistics, U.S. Dep't of Justice, Fact Sheet: *Profile of Nonviolent Offenders Exiting State Prisons*, at 4 & tbl. 11 (Oct. 2004)). Other studies show that persons with firearms-related convictions are at a heightened risk of recidivism. For example, the Department of Justice found that 79.5% of prisoners convicted of weapons-related offenses were rearrested within 5 years of their release. *See* Deft's Ex. K (Bureau of Justice Statistics, U.S. Dep't of Justice, *Recidivism of Prisoners Released in 30 States in 2005: Patterns from 2005 to 2010*, at 8 tbl. 8 (Apr. 2014)).

This body of research, coupled with the narrowly drawn statutory language, demonstrates a substantial fit between the Commonwealth's goals of preventing crime and promoting public safety, on the one hand and, Section 131(d)(ii)(D)'s disqualification of persons with weapons-related offenses that authorize a term of imprisonment, on the other. Dr. Morin protests that the Commonwealth should not be able to disqualify non-violent misdemeanants from possession of firearms, *see* Pltf's Br. at 7–8, but the First Circuit has twice rejected that same Second Amendment claim. *See Carter*, 752 F.3d at 12; *Armstrong*, 706 F.3d at 7–8. And in any event, the research demonstrates that non-violent misdemeanants, and especially non-violent

misdemeanants with firearms-related convictions, are significantly more likely to engage in crime and pose a risk to public safety in the future. *See supra*, at 15. Section 131(d)(ii)(D) is therefore constitutional, both on its face and as applied to persons like Dr. Morin who have been convicted of non-violent weapons-related misdemeanors.

That conclusion is sufficient to resolve this case. But to the extent this Court also considers the particular facts bearing on Dr. Morin's case,[8] Section 131(d)(ii)(D) is constitutional as applied to Dr. Morin. Plainly stated, Dr. Morin is not a responsible gun owner. In a range of circumstances and over the span of several years, Dr. Morin repeatedly exhibited an unwillingness to comply with laws designed to promote firearms safety and preserve the integrity of the firearms licensing process. First, in 2004, Dr. Morin drove from Massachusetts to Washington D.C. with a loaded pistol, even though he was not licensed to carry a firearm in any state he drove through except Massachusetts. *See* Deft's Ex. A, ¶ 3. Although some of the states he passed through may have recognized his Massachusetts license to carry concealed weapons, other states, including New York, Connecticut, New Jersey, and Maryland, did not. *See* U.S. Govt. Accountability Office, STATES' LAWS AND REQUIREMENTS FOR CONCEALED CARRY PERMITS VARY ACROSS THE NATION 80–82 (July 2012) (Deft's Ex. L) (New York, Connecticut, New Jersey, and Maryland do not honor concealed carry permits issued by other states). In each of those states, it is illegal to carry a firearm without a license to carry or permit issued by that state. *See* Conn. Gen. Stat. § 29–35; Md. Laws § 4–203(a); N.J. Stat. Ann. § 2C:39–5(b); N.Y.

---

[8] The First Circuit has not determined whether an individual's personal circumstances are relevant in as-applied Second Amendment claims. The court has observed that "such an approach, applied to countless variations in individual circumstances, would obviously present serious problems of administration, consistency and fair warning." *Torres-Rosario*, 658 F.3d at 113. Although the Commonwealth does not concede that this Court may consider Dr. Morin's personal circumstances in this case, it will nevertheless brief the matter because Dr. Morin has cited his circumstances in support of his claim. *See* Pltf's Br. at 1.

Penal Law, § 265.01–b. Dr. Morin therefore violated several states' firearms laws in 2004, in addition to the laws he was convicted of violating in Washington D.C.

Second, once he was in Washington D.C., Dr. Morin approached a federal government building with a loaded pistol. *See* Deft's Ex. D, at 4. It is common knowledge that civilians cannot bring firearms into federal government buildings, whether Smithsonian museums or federal courthouses. *See* 18 U.S.C. §§ 930(a), (e)(1); *Heller v. District of Columbia*, 801 F.3d 264, 283 (D.C. Cir. 2015) (*Heller III*) (Henderson, J., concurring in part and dissenting in part) ("[T]he District of Columbia is sui generis. . . . [It] is the seat of our national government. The record amply documents the unique security risks presented by a city full of high-level government officials, diplomats, monuments, parades, protests and demonstrations and, perhaps most pertinent, countless government buildings where citizens are almost universally prohibited from possessing firearms."). Dr. Morin's decision to enter a federal government building in the District of Columbia with a loaded pistol reveals profound disregard for the laws protecting the security of federal officials and the public.

Third, four years after his convictions, Dr. Morin falsely represented on his 2008 license-to-carry renewal application form that he had not been convicted of any law regulating the possession of weapons for which a term of imprisonment could be imposed. *See* Deft's Ex. B, at 2. In so doing, Dr. Morin violated G.L. c. 140, § 129, which makes it a criminal offense to "knowingly offe[r] or giv[e] false information concerning . . . [a] criminal record" in any "application for any form of license or permit issued in connection" with a firearm, and G.L. c. 140, § 131(h), which specifies criminal penalties for "[a]ny person who knowingly files [a license-to-carry] application containing false information." As the First Circuit has explained, the

> requirement that firearms license applicants provide truthful information, enforced by the revocation of licenses if the applicant provides false information, serves a variety of

important purposes. For one, it helps ensure the integrity of the system of keeping prohibited persons from possessing firearms. . . . A licensing authority does not necessarily possess all of the information necessary to determine an individual's eligibility. The submission of false information by an applicant could make it more difficult for the licensing authority to assess whether the applicant is eligible (e.g., submission of a false name would make it more difficult to perform a background check). The prohibition of the inclusion of false information in a license application is necessary to the functioning of the licensing scheme.

*Hightower*, 693 F.3d at 74–75 (holding that "the revocation of a firearms license on the basis of providing false information . . . on the firearms license application form is not a violation of the Second Amendment"). In submitting false information on his 2008 renewal application, Dr. Morin sought to circumvent Massachusetts' firearms licensing laws. Such conduct, coupled with his 2004 violations of other jurisdictions' licensing laws, suggests that Dr. Morin will not respect firearms regulations in the future and is not the sort of "law-abiding, responsible citizen" who can be entrusted with a firearm.

Finally, there are no facts in the record tending to show that Dr. Morin is a law-abiding, responsible citizen, or that Dr. Morin poses no risk to public safety. Dr. Morin's brief in support of his motion for summary judgment makes several claims about his personal characteristics and background, *see* Pltf's Br. at 1–2, but these statements must be disregarded because they are not supported by deposition testimony or any other competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring the moving party to support factual assertions with "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials"). Indeed, Dr. Morin's Rule 56.1 Statement cites only the complaint as support for the statements, but his unverified complaint cannot supply competent evidence in support of a motion for summary judgment. *See id*.

For all of these reasons, Section 131(d)(ii)(D) is constitutional as applied to Dr. Morin, and the Commonwealth is entitled to judgment on his Second Amendment claim.

## II.   Dr. Morin Lacks Standing to Challenge Other Massachusetts Laws Pertaining to Firearms Licensing.

Finally, Dr. Morin refers in passing to three other statutes that he purports to challenge—G.L. c. 140, § 131(d)(i)(D), G.L. c. 140, § 129B(1)(i)(D), and G.L. c. 140, § 129B(1)(ii)(D). *See* Pltf's Br. at 4, 9. But none of these statutes has any bearing on Dr. Morin or on his Second Amendment claim. Section 131(d)(i)(D) disqualifies persons who have been convicted "in a court of the [C]ommonwealth" of a weapons- or ammunition-related offense for which a term of imprisonment can be imposed from obtaining a license to carry. G.L. c. 140, § 131(d)(i)(D). But there is no evidence that Dr. Morin has a *Massachusetts* conviction that disqualifies him from license to carry eligibility. Sections 129B(1)(i)(D) and 129B(1)(ii)(D) prohibit persons with a weapons- or ammunition-related convictions for which a term of imprisonment can be imposed from obtaining an FID card. G.L. c. 140, §§ 129B(1)(i)(D), 129B(1)(ii)(D). But there is no evidence that Dr. Morin has ever applied for, or ever intends to apply for, an FID card.

Because Sections 129B(1)(i)(D), 129B(1)(ii)(D), and 131(d)(i)(D) have not operated to restrict Dr. Morin's ability to possess a firearm, Dr. Morin lacks standing to challenge the statutes as unconstitutional. Dr. Morin has not claimed that he has been injured by enforcement of the statutes or that the denial of his license to carry application can be fairly traced to the statutes. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (injury and causation are essential elements of Article III standing). Accordingly, to the extent Dr. Morin asserts a Second Amendment challenge to the statutes, this Court is without jurisdiction to consider the claim.

### CONCLUSION

For the foregoing reasons, this Court should deny Dr. Morin's motion for summary judgment, grant the Commonwealth's cross-motion for summary judgment, and enter judgment in favor of the Commonwealth.

Respectfully submitted,

THE COMMONWEALTH OF
MASSACHUSETTS,

By its attorney,

MAURA HEALEY
ATTORNEY GENERAL


   /s/ Julia Kobick
Julia Kobick, BBO #680194
Assistant Attorney General
Office of the Attorney General
Government Bureau
One Ashburton Place, 20th Floor
Boston, Massachusetts 02108
Date: January 22, 2016            (617) 963-2559


**CERTIFICATE OF SERVICE**

I certify that this document filed through the CM/ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 22, 2016.

/s/ Julia Kobick
Julia Kobick
Assistant Attorney General

21