COMMONWEALTH OF MASSACHUSETTS
UNITED STATES DISTRICT COURT

DOCKET NO. 4:15-CV-40048-TSH

ALFRED MORIN,

      Plaintiff

v.

MARK K. LEAHY, in his official capacity as
NORTHBOROUGH CHIEF OF POLICE,

      Defendant

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT COMMONWEALTH OF MASSACHUSETTS' MOTION FOR
SUMMARY JUDGMENT**

      Now comes the plaintiff, Alfred Morin, by and through undersigned counsel, and submits his Memorandum of Points and Authorities in Opposition of Defendant Commonwealth of Massachusetts' Motion for Summary Judgment.

Dated: February 12, 2016             Respectfully submitted,

                                       Alfred Morin,
                                       By His Attorney,

                                       /s/ J. Steven Foley
                                       J. Steven Foley
                                       11 Pleasant St #100
                                       Worcester MA 01609
                                       BBO: 685741
                                       508-754-1041
                                       508-739-4051 (fax)
                                       JSteven@attorneyfoley.com

# Table of Contents

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I.     The Defendant's use of 1st Circuit case law. ................................................................... 3

II.    The Defendant's brief relies mostly on precedent involving violent felons, drug users,  and domestic abusers to support disarming a non-violent, happily married model citizen................... 4

III.   Dr. Morin is not a felon......................................................................................................... 7

IV.    The plaintiff's circumstances do not present the traditional justification for disarmament. 13

CONCLUSION......................................................................................................................... 16

TABLE OF AUTHORITIES

Cases

**Apprendi v. New Jersey**, 530 U.S. 466 (2000) ..................................................................... 9

**Binderup v. Holder**, No. 13-CV-6750, 2014 U.S. Dist. LEXIS 135110 (E.D. Pa., Sept. 25, 2014) ......................................................................................................................... 9, 17

**Britt v. State**, 363 N.C. 546, 681 S.E.2d 320 (N.C. 2009) ................................................ 16

**District of Columbia v. Heller**, 554 U.S. 570 (2008) ............................................. 10, 11, 12, 14

**Ezell v. City of Chicago**, 651 F.3d 684, 699 (7th Cir. 2011) ........................................ 17

**Gowder v. City of Chicago**, 923 F. Supp. 2d 1110 (N.D. Ill. 2012) .............................. 9, 11, 13

**Heller v. District of Columbia**, 670 F.3d 1244 (D.C. Cir. 2011) ................................... 12

**In re Winship**, 397 U.S. 358 (1970) ................................................................................ 9

**McDonald v. City of Chicago**, 130 S. Ct. 3020, 3047 (2010) ..................................... 10

**Powell v. Tompkins**, 783 F.3d 332, 347 n. 9 (1st Cir. 2015) ....................................... 4

**Schrader v. Holder**, 704 F.3d 980, 992 (D.C. Cir. 2013) ........................................... 11

**Suarez v. Holder**, No. 14-CV-968, 2015 U.S. Dist. LEXIS 19378 (M.D. Pa. Feb. 18, 2015) 9, 16

**United States v. Armstrong**, 706 F.3d 1, (1st Cir. 2013) ............................................. 3

**United States v. Barton**, 633 F.3d 168 (3d Cir. 2011) .......................................... 10, 13, 14, 16

**United States v. Booker**, 644 F.3d 12 (1st Cor. 2011) ................................................. 3

**United States v. Carpio-Leon**, 701 F.3d 974 (4th Cir. 2012) ................................... 6, 15

**United States v. Carter**, 752 F.3d 8, (1st Cir. 2014) ................................................... 3

**United States v. Chester**, 628 F.3d 673 (4th Cir. 2010) ......................................... 10, 13

**United States v. Chovan** 735 F.3d 1127 (9th Cir. 2013) ...................................... 7, 10, 13

**United States v. Moore**, 666 F.3d 313 (4th Cir. 2012) ......................................... 5, 14, 15

**United States v. Pruess**, 703 F.3d 242 (4th Cir. 2012) ....................................... 5, 14, 16

**United States v. Rene E.**, 583 F.3d 8 (1st Cir. 2009)........................................................ 4

**United States v. Rozier**, 598 F.3d 768 (11th Cir. 2010) ................................................. 6

**United States v. Scroggins**, 599 F.3d 433 (5th Cir. 2010) .............................................. 7

**United States v. Skoien** 614 F.3d 638, (7th Cir. 2010) ................................................. 6

**United States v. Smoot**, 690 F.3d 215 (4th Cir 2012)......................................... 15, 16

**United States v. Torres–Rosario**, 658 F.3d 110 (1st Cir. 2011) ................................. 4

**United States v. Vongxay**, 594 F.3d 1111 (9th Cir. 2010)........................................... 6
**United States v. White**, 593 F.3d 1199, (11th Cir. 2010) ............................................ 7

Statutes

D.C. Code § 22-4504 ........................................................................................................ 8

D.C. Code § 7-2507 .......................................................................................................... 8

M.G.L. ch. 140 § 129B ................................................................................................ 18, 19

M.G.L. ch. 140 § 131 ............................................................................................... 8, 18, 19

M.G.L. ch. 90 §20D ......................................................................................................... 18

M.G.L. ch. 90D  §4(a)....................................................................................................... 18

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

The Defendant's cross-motion for Summary Judgment should be denied, as the Plaintiff has alleged facts sufficient to establish both his right to relief and standing to claim such relief.

## FACTUAL BACKGROUND

The Plaintiff will spend the court's time restating another rendition of essentially the same, undisputed, facts. The Defendant stated in its brief that Dr. Morin does not contain a Sworn Declaration or affidavit in support of his summary judgment motion. (See Defendant's Brief p. 19.) To avoid an unnecessary battle, the Plaintiff submits with this brief a Sworn Declaration attesting to these facts. (See Sworn Declaration of Dr. Morin.) The Plaintiff will address here some of the facts that are in dispute.

In their facts section the Defendants make much of the fact that Dr. Morin made a mistake while applying for his license renewal in 2008. (See Defendant's Brief, p. 5). This is mentioned in an inflammatory and pejorative context in which it is stated that the Plaintiff "falsely answered", or "falsely represented" his past record, and goes on to state that Dr. Morin violated two criminal statutes that requires *knowingly* offering false information. (See Id. ps. 5, 18) "In submitting false information on his 2008 renewal application, Dr. Morin sought to circumvent Massachusetts' firearm licensing laws." (See Id. p. 19.) Dr. Morin was never charged with knowingly offering false information on his 2008 application, nor is there a scintilla of evidence in the record that he sought to "circumvent Massachusetts' firearm licensing laws."

1

As Dr. Morin admits in the attached Sworn Declaration, he is neither a lawyer nor a constitutional scholar. (See Sworn Declaration of Dr. Morin ¶ 9.) He admits making a mistake in filling out the 2008 application. (See Id.)  In 2008 Dr. Morin did not consult with an attorney prior to submitting his 2008 LTC application. (See Id. ¶ 10.)  He did so in 2015, when he answered the question correctly. (See Id. ¶ 10.)  The Defendant does not state there were any defects with the 2015 application. (See Defendant's Brief.) It is this 2015 application that is the subject of the instant case, as the statute of limitations has tolled on the 2008 incident, for both parties.

The Defendant argues Dr. Morin is not responsible because he violated licensing laws in all the states he drove through. (See Defendant's Brief p. 7.) Dr. Morin said that when the gun 1998 control law came out, he carefully read the entire thing and does not recall reading that a Massachusetts License is only valid in Massachusetts. He had no knowledge that his license was invalid outside Mass, and does not know how he could have learned that. (See Sworn Declaration of Dr. Morin ¶ 11.)

Save for minor traffic infractions, Dr. Morin has not been convicted of any crimes other than the sole conviction at dispute in this case. He acknowledges that this was a serious offense, and that doing so involved bad judgment on his part. (See Sworn Declaration of Dr. Morin ¶ 12.)

Dr. Morin never "sought" to enter a federal building with a firearm. He intended to visit a museum.  He did not knowingly "falsely" answer on the 2008 application; he incorrectly answered the question. (See Sworn Declaration of Dr. Morin ¶ 12.)

# ARGUMENT

2

# I.    The Defendant's use of 1ˢᵗ Circuit case law.

The Defendant's Brief states at p.16: "Dr. Morin protests that the Defendant should not be able to disqualify non-violent misdemeanants from possession of firearms. See Pltf's Br at 7-8, but the First Circuit has twice rejected that same Second Amendment claim." Cited were **United States v. Armstrong**, 706 F.3d 1, (1ˢᵗ Cir. 2013) and **United States v. Carter**, 752 F.3d 8, (1ˢᵗ Cir. 2014). Both cases involved violent actors.

In **Armstrong** the Defendant was arrested for slugging his wife, after arguing about her baking cookies. How the Defendant contorted this into a non-violent act is inexplicable. The court held that denying Armstrong a gun "..substantially promotes an important government interest in preventing domestic gun violence…" See **Armstrong**, 706 F.3d at 29. The Defendant in **United States v. Carter**, 752 F.3d 8, (1ˢᵗ Cir. 2014) admitted spitting in his girlfriend Annie Eagan's face and shoving her in front of Eagan's ten year old daughter. Dr. Morin's application wasn't rejected because he spat in a person's face in front of that person's daughter, or for his beating wife due to a cookie dispute.

Four other 1ˢᵗ Circuit cases cited by the Defendants also omitted key facts.

The Defendants cited **United States v. Booker**, 644 F.3d 12, 23 (1ˢᵗ Cor. 2011) that:

> The First Circuit has held *unambiguously* that 'statutory prohibitions on the possessions of weapons by some persons are proper' …Restrictions on the right to possess a firearm need not be 'be imposed only on an individualized, case-by-case basis.' (See Defendant's Brief p. 10, emphasis added.)

What the Defendants omitted is that Booker beat his wife and shot another hunter while out hunting. These core facts are completely different from the instant case.

In a string citation the Defendants cited **United States v. Torres–Rosario**, 658 F.3d 110 (1ˢᵗ Cir. 2011) for the argument that it was appropriate to reject a party's challenge even though

3

he had "no prior convictions for any violent felony." (<u>See</u> Id.) The Defendants omitted that Rosario was convicted of selling cocaine, a crime for which he would logically be excluded from owning a gun. The Plaintiff is not arguing that the state should not disarm drug dealers.

The Defendant claimed Dr. Morin flunked the test in **<u>Powell v. Tompkins</u>**, 783 F.3d 332, 347 n. 9 (1st Cir. 2015) to substantiate their conclusion that Dr. Morin is not a "law-abiding, responsible citizen" and that such "persons [as Dr. Morin] are plainly not law abiding, as they are convicted criminals." (<u>See</u> Defendant Brief p. 7.) This is asserted with no reference to the any facts. It ignores the fact that Dr. Morin has no history of violent behavior. He is sixty-nine years old and poses no danger to society.

In **<u>United States v. Rene E.</u>**, 583 F.3d 8 (1st Cir. 2009), law enforcement agents found drug paraphernalia, stolen property, a box of hollow-point ammunition for a .38 caliber handgun, a plastic bag containing dried marijuana, and a silver-colored revolver with a wooden grip. None of this was noted by the Defendants in their brief.

## II.   The Defendant's brief relies mostly on precedent involving violent felons, drug users,     and domestic abusers to support disarming a non-violent, happily married model citizen.

The Defendant argues that many jurisdictions have upheld prohibitions on firearm possession by persons convicted of various crimes, and cites many decisions. Most of the crimes in question fall into one of three categories: felonies, violent misdemeanors, or drug related misdemeanors. No case is cited standing for the proposition that a prohibition on firearms possession in the home based on a non-violent, non drug-related, misdemeanor comports with constitutional standards.

The Defendant cites **United States v. Pruess**, 703 F.3d 242, 245–47 (4th Cir. 2012) for the proposition that Dr. Morin was not protected by the Second Amendment because he "undoubtedly flunks the 'law-abiding responsible citizen' requirement". This ignores that Pruess was charged with the possession and transfer of three grenades and a mortar round, all with obliterated identification and lot numbers. The difference with Dr. Morin - who went to a law enforcement officer with his legally purchased weapon in the mistaken belief he was acting in a law abiding manner - and a man with hand grenades and a mortar round are so profound that one can hardly believe **Pruess** was cited by the Defendant in this context.

The Defendant repeated their omission of key facts in **Pruess** in **United States v. Moore**, 666 F.3d 313 (4th Cir. 2012). Moore had prior felony convictions for selling or delivering cocaine, three common law robberies, and two assaults with a deadly weapon on a government official.

The Defendant cited dicta from **United States v. Carpio-Leon**, 701 F.3d 974 (4th Cir. 2012) that "[T]he government should disarm unvirtuous citizens." (See Defendant Brief p. 9.) The problem with this argument is that Carpio-Leon wasn't a citizen; he admitted being in the U. S. illegally and using a false social security number to obtain a driver's license. Wrote the **Carpio-Leon** court: "We only hold here that illegal aliens do not fall in the class of persons who are classified as law-abiding members of the political community for the purpose of defining the Second Amendment's scope."

The Defendant's Brief at p. 10 string cited precedent leaving out key facts and quoting dicta. In **United States v. Skoien** 614 F.3d 638, (7th Cir. 2010) Skoien was twice convicted of "domestic battery" before probation officers discovered a shotgun in Skoien's truck. This contrasts greatly with the instant case, where Dr. Morin went to a law enforcement officer with

5

his weapon. Skoien's offenses didn't make it into the Defendant's brief. Dr. Morin agrees that

drug dealers and thieves possessing stolen weapons are not protected by the second amendment.

Over a two year period, as recounted in **United States v. Rozier**, 598 F.3d 768 (11th Cir.

2010),  Rozier pleaded guilty to four counts of the delivery of Cocaine, possession of cocaine,

and delivery of cannabis. Yet the Defendant cited Rozier as a "non-violent" felony offender. The

Defendant in **United States v. Vongxay**, 594 F.3d 1111 (9th Cir. 2010) had two felony

convictions for car burglary and one for drug possession. One only has took at the way cocaine is

poisoning our youth and destroying our inner cities to understand the utter fallaciousness of these

assertions.

In **United States v. Scroggins**, 599 F.3d 433 (5th Cir. 2010), while arresting Scroggins's

wife for murder, police found in an incidental search a semi-automatic pistol magazine in

Scroggins's pockets. A search of a bedroom Scroggins had emerged from revealed two guns in

plain view. **Scroggins** was primarily a search and seizure Fourth Amendment challenge. The

Second Amendment issues were dismissed by the court in a three paragraph finding at the close

of their decision.

The two cases of **United States v. Chovan** 735 F.3d 1127 (9th Cir. 2013) and **United

States v. White**, 593 F.3d 1199, (11th Cir. 2010), cited in Defendant's Brief p.11, both involved

individuals with a history of beating their wives and/or girlfriends. According to his conviction,

White on June 22, 2003, tried to choke his then live-in girlfriend.

> During their investigation, FBI agents found videos on the Internet
> depicting Chovan and others shooting rifles and conducting "border patrols" near
> the U.S.-Mexico border. Fix, Chovan's then-estranged wife, told the officers that
> Chovan had become violent, hit her with a cell phone, and threatened to hunt her
> down and shoot her if she ever left him.

The plaintiff is not arguing that Chovan and White should not be disarmed.

6

## III.   Dr. Morin is not a felon.

M.G.L. Ch. 140 § 131 uses the word "felony" twice, both referencing crimes by "youthful offender or delinquent" (See M.G.L. ch. 140 § 131(d)(i)(D) and M.G.L. c. 140 § 131(d)(ii)(D)). D.C. Code § 22-4504 contains one reference to the word "felony", providing for penalties in the event the weapon is used during the commission of a felony. D.C. Code § 7-2507 does not reference the word "felony". ".

18 U.S.C § 922, the Federal Statute prohibiting possession of firearms by "felons", declares

(g) It shall be unlawful for any person—

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;…

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The term "crime punishable by imprisonment for a term exceeding one year" does not include—

(A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or

(B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less. 18 U.S.C § 921(20)

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

The idea that someone who is convicted of a misdemeanor because someone, under some other circumstances and in some other place could have committed a felony is not only

7

preposterous, it is constitutionally barred.  See **In re Winship**, 397 U.S. 358 (1970), **Apprendi v. New Jersey**, 530 U.S. 466 (2000)

Dr. Morin is a non-violent, non-dangerous misdemeanant offender whose disarmament cannot be justified on traditional, if any, grounds. There is no evidence that would tend to demonstrate that Dr. Morin is more likely to create a risk to public safety than the typical, responsible law-abiding citizen.

Federal courts have repeatedly enjoined application of gun control laws, on Second Amendment grounds, on the basis of non-violent misdemeanors by non-dangerous people. See **Suarez v. Holder**, No. 14-CV-968, 2015 U.S. Dist. LEXIS 19378 (M.D. Pa. Feb. 18, 2015); see also **Binderup v. Holder**, No. 13-CV-6750, 2014 U.S. Dist. LEXIS 135110 (E.D. Pa., Sept. 25, 2014); see also **Gowder v. City of Chicago**, 923 F. Supp. 2d 1110 (N.D. Ill. 2012) (enjoining city ordinance prohibiting gun possession for non-violent misdemeanor). This Court should follow suit.

But considering the weight of Dr. Morin's constitutional claim, the constitutional avoidance doctrine cautions that the Court first explore non-constitutional avenues for affording Dr. Morin relief.  The Supreme Court, to be sure, has stated that there are "historical justifications" supporting  longstanding prohibitions on the possession of firearms by felons," **District of Columbia v. Heller**, 554 U.S. 570, at 626, 635 (2008) (emphasis added), and thus that such measures are "presumptively lawful," Id. at 627 n.26; see also **McDonald v. City of Chicago**, 130 S. Ct. 3020, 3047 (2010) (plurality). By singling out felons, however, this statement if anything cuts against a finding that misdemeanants lack Second Amendment rights. Misdemeanants are not considered "felons." For example, the firearm prohibition leveled at domestic violence misdemeanants, though upheld as constitutional, "was not included in Heller's

8

list of permissible regulations." **United States v. Barton**, 633 F.3d 168, 172 n.2 (3d Cir. 2011)

(citations omitted); see also **Chovan**, 735 F.3d at 1137; **United States v. Chester**, 628 F.3d 673,

681-682 (4th Cir. 2010) (misdemeanants not presumptively excluded from Second Amendment

rights under Heller).

> While the Supreme Court has historically allowed prohibitions as to certain individuals,
> including felons and those convicted of violent crimes, at the time the Second
> Amendment was passed and at the time the Fourteenth Amendment was ratified, it was
> not intended to apply to non-violent misdemeanants, nor has this group of individuals
> traditionally been barred from exercising their inherent Second Amendment rights.

> **Gowder v. City of Chicago**, 923 F. Supp. 2d at 1122.

When Heller spoke of "felons," it spoke of a traditional common-law classification

known to the Framers, not late-twentieth century statutes including some vast (if disputed)

number of misdemeanor offenses. Courts reject extending Heller's "felon" presumption beyond

actual felons for good reason. There is no historical support for the sweeping proposition that all

"prior criminal convictions" triggered disarmament, let alone for life.

In any event, in **Schrader**, the court suggested that the individualized as-applied inquiry

displaces the two-step process. It offered that Schrader's sympathetic facts would not "place him

outside the class" of people who enjoy Second Amendment rights, **Schrader**, 704 F.3d at 990,

and gun laws are subject to an "as-applied constitutional challenge brought by an individual who,

despite a prior conviction, has become a 'law-abiding, responsible citizen[]' entitled to [exercise

Second Amendment rights," id. at 992 (quotation omitted).

It is equally accepted among the courts that presumptively constitutional felon

disarmament laws are subject to as-applied challenges. These laws remain vulnerable to a

properly raised as-applied constitutional challenge brought by an individual who, despite a prior

conviction, has become a "law-abiding, responsible citizen[]" entitled to "use arms in defense of

hearth and home." **Schrader v. Holder**, 704 F.3d 980, 992 (D.C. Cir. 2013) (quoting District of Columbia v. Heller, 554 U.S. 570, 635 (2008)).

As it is clear that individuals may raise as-applied Second Amendment challenges to felon disarmament laws, the Court must consider how such claims might be evaluated. In **Heller**, neither the D.C. Circuit nor the Supreme Court employed any means-ends scrutiny to test Washington. D.C.'s challenged gun laws, striking them down simply upon a finding that the laws were inconsistent with the rights guaranteed by the amendment. Indeed, means-ends scrutiny is a modern creation; courts have historically not used any balancing tests in applying the Second Amendment or its various state constitutional analogs.

In **Heller**'s wake, appellate courts have nonetheless favored applying a two-step means-ends scrutiny test in Second Amendment cases. At step one, courts ask whether the challenged laws implicate conduct secured by the Second Amendment. If not, the matter ends there. If so, step two calls for the application of a balancing test to measure the appropriate level of constitutional "fit" between the governmental interests and the law. **Heller v. District of Columbia**, 670 F.3d 1244 (D.C. Cir. 2011) ("Heller II").As-applied challenges do not fit neatly into the two-step paradigm. If a plaintiff's facts are
such that he or she is a responsible, law-abiding person entitled to exercise Second Amendment rights, then the Government lacks an interest in disarming that plaintiff. And because the inquiry is personal, focused on one particular individual, the disability's "fit" with respect to the population at large is irrelevant.

Clearly, this applies in the instant case. Dr. Morin is a non-violent individual who lacked the *mens rea* to commit a criminal act. An additional issue arises where the plaintiff challenges the law's application on the basis of a misdemeanor rather than a felony. It is unclear whether the

provision's ordinary presumptive validity is in force where misdemeanor triggers are concerned. When the Supreme Court spoke of the Second Amendment as securing the rights of "law-abiding, responsible citizens," **Heller**, 554 U.S. at 635, it did not contrast this with state statutes that do not employ the word "felony" in a context applicable to Dr. Morin. Rather, the Supreme Court contrasted "law-abiding, responsible citizens" with "felons and the mentally ill." Heller, 554 U.S. at 626 (emphasis added); see **United States v. Chovan**, 735 F.3d 1127, 1148 (9th Cir. 2013) (Bea, J., concurring).

Misdemeanants are not considered "felons." For example, the firearm prohibition leveled at domestic violence misdemeanants, though upheld as constitutional, "was not included in Heller's list of permissible regulations." **United States v. Barton**, 633 F.3d 168, 172 n.2 (3d Cir. 2011) (citations omitted); see also **Chovan**, 735 F.3d at 1137; **United States v. Chester**, 628 F.3d 673, 681-82 (4th Cir. 2010) (misdemeanants not presumptively excluded from Second Amendment rights under Heller).

While the Supreme Court has historically allowed prohibitions as to certain individuals, including felons and those convicted of violent crimes, at the time the Second Amendment was passed and at the time the Fourteenth Amendment was ratified, it was not intended to apply to non-violent misdemeanants, nor has this group of individuals traditionally been barred from exercising their inherent Second Amendment rights. **Gowder**, 923 F. Supp. 2d at 1122.

When Heller spoke of "felons," it spoke of a traditional common-law classification known to the Framers, not a late-twentieth century statute including some vast (if disputed) number of misdemeanor offenses. Courts reject extending Heller's "felon" presumption beyond actual felons for good reason. There is no historical support for the sweeping proposition that all "prior criminal convictions" triggered disarmament, let alone for life.

The Third and Fourth Circuits have likewise dispensed with the two-step process for as-applied claims. In the Third Circuit, to raise a successful as-applied challenge, [an individual] must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections. For instance, a felon convicted of a minor,

non-violent crime might show that he is no more dangerous than a typical law-abiding citizen. Similarly, a court might find that a felon whose crime of conviction is decades-old poses no continuing threat to society. **Barton**, 633 F.3d at 174. In the Fourth Circuit, "[t]he Chester [two-step] analysis is more streamlined" in cases involving firearms regulations deemed "presumptively lawful" in Heller. That is, a presumptively lawful regulation could not violate the Second Amendment unless, as applied, it proscribed conduct "fall[ing] within the category of . . . 'law-abiding responsible citizens . . . us[ing] arms in defense of hearth and home.'" **United States v. Pruess**, 703 F.3d 242, 245 (4th Cir. 2012) (quoting **United States v. Moore**, 666 F.3d 313, 318-19 (4th Cir. 2012); **Heller**, 554 U.S. at 635. In other words, the Fourth Circuit essentially dispenses with the second step of the two-step process in felon-disarmament challenges, because a "presumptively lawful" law is facially constitutional. The only question is whether the claimant, notwithstanding the disabling convictions, "fall[s] within the category of citizens to which the Heller court ascribed the Second Amendment protection of 'the right of law-abiding responsible citizens to use arms in defense of hearth and home." **Moore**, 666 F.3d at 319 (quoting **Heller**, 554 U.S. at 635) (emphasis in Moore). To show that a person convicted of a disabling offense "nonetheless remain[s] in the protected class of 'law-abiding, responsible' persons," **United States v. Carpio-Leon**, 701 F.3d 974, 981 (4th Cir. 2012), "a litigant claiming an otherwise constitutional enactment is invalid as applied to him must show that his factual

circumstances remove his challenge from the realm of ordinary challenges." **Moore**, 666 F.3d at

319; **United States v. Smoot**, 690 F.3d 215, 221 (4th Cir 2012).

These cases are on all fours. The Plaintiff is a law abiding individual and a respected

community leader. Aged sixty-nine, he poses no danger to society.

## IV.    The plaintiff's circumstances do not present the traditional justification for disarmament.

The "traditional justifications" for disarming felons are plain enough: dangerous people

should not have firearms. "Debates from the Pennsylvania, Massachusetts and New Hampshire

ratifying conventions, which were considered 'highly influential' by the Supreme Court in Heller

... confirm that the common law right to keep and bear arms did not extend to those who were

likely to commit violent offenses." Id.; (relief from disability where "the applicant will not be

likely to act in a manner dangerous to public safety and that the granting of the relief would not

be contrary to the public interest").

Of course the nature and extent of the claimant's criminal history is a significant,

sometimes preclusive aspect of one's "factual circumstances" examined in such cases. See, e.g.,

**Moore**, 666

F.3d at 320 ("Particularly in light of his extensive and violent criminal history, Moore's conduct

here is plainly outside the scope of the Second Amendment."); **Smoot**, 690 F.3d at 221 & n.8

("remarkably egregious" criminal history "which in the aggregate demonstrate[s] a pattern of

criminality placing his character well outside any definition of 'law-abiding'"); **Pruess**, 703 F.3d

at 246 ("Pruess' repeated violations of the firearms laws, leading to at least twenty prior

convictions, make clear he is hardly 'law-abiding' and 'responsible.'").

13

Because the touchstone of the inquiry is dangerousness, a felon may be disarmed even though all the predicate convictions are themselves non-violent. **Pruess**, 703 F.3d at 247. For example, "[c]ourts have held in a number of contexts that offenses relating to drug trafficking and receiving stolen weapons are closely related to violent crime," and those offenses thus support a firearms prohibition. **Barton**, 633 F.3d at 174 (citations omitted). Yet while a felon's criminal history might be so serious, or so trivial, as to determine the as-applied challenge's outcome in either direction, the cases make clear that the inquiry is a holistic one. Thus, even a drug-trafficking conviction that would ordinarily justify a prohibition might, given the totality of the circumstances, not justify a firearms disability. See **Britt v. State**, 363 N.C. 546, 681 S.E.2d 320 (N.C. 2009).

Two recent decision, from the Eastern and Middle Districts of Pennsylvania, exemplify as applied Second Amendment relief. In **Suarez**, the plaintiff's criminal history included a Maryland conviction for having a handgun in his car without the benefit of a carry license, for which he was disarmed, as well as a subsequent conviction for driving under the influence of alcohol. Neither conviction could be classified as a violent crime, and indeed, the plaintiff was an otherwise upstanding citizen with a stable family life and a respected community leader.

In **Binderup v. Holder**, No 13-6750, 2014 U.S. Dist. LEXIS 135110 (E.D. Pa. Sept. 25, 2014), the plaintiff's criminal history consisted only of a non-violent misdemeanor conviction for "corruption of a minor," arising from a consensual if illicit affair. Like Mr. Suarez, Mr. Binderup had a stable family life, was a productive and peaceful member of his community, and notwithstanding the federal prohibition, had seen his firearm rights restored by his state of residence.

14

Suarez and Binderup both prevailed. So should Dr. Morin. His conviction is over a decade old. Cf. **Ezell v. City of Chicago**, 651 F.3d 684, 699 (7th Cir. 2011) (loss of Second Amendment rights constitutes irreparable harm). He has never been violent, was not convicted of a crime related in any way to violence, and has proven himself to be a stable and reliable member of the community—trustworthy enough to supervise a search for a new superintendent. There is no reason why Dr. Morin, considering his circumstances, should be unable to defend himself and his family at home.

The Defendant argues that because Dr. Morin was convicted of a strict-liability crime he does not fall under the umbrella of responsible, citizens, he is not entitled to the protection of the second amendment. The law Dr. Morin was convicted of breaking is a strict liability law, with no element of intent whatsoever. There is no *mens rea* here.

The Defendant argues that Dr. Morin is not responsible or law-abiding because he did not understand and abide by the reciprocity laws regarding firearm licensing among the states. Ironically, the Defendant included, as an exhibit, a 90 page report, produced by the United States Government Accountability Office, titled "States' Laws and Requirements for Concealed Carry Permits Vary across the Nation". Dr. Morin cannot be faulted for not understanding the incredible complexities of gun laws across the country, when Congress found it necessary to commission a study for exactly that purpose.

We should bear in mind that there are a number of Massachusetts laws providing for imprisonment which would prevent an otherwise law abiding citizen from getting a firearm, such as mutilating a parking ticket, one month imprisonment; (M.G.L. ch. 90 §20D); or failure to apply for a motor vehicle title, imprisonment for six months (M.G.L. ch. 90D  §4(a). Under the Defendant's interpretation of M.G.L. ch. 140 § 131, these people could be disarmed.

## Standing to challenge FID prohibition

The Commonwealth argues that Dr. Morin has no standing to challenge M.G.L. ch. 140 § 129B(1)(ii)(D), because he had never been applied for a Firearms Identification Card. Although Dr. Morin has never applied for an FID card, the identical prohibitive language in that statute would similarly preclude him from obtaining an FID. Dr. Morin has every right to apply for an FID and, but for the prohibition of § 126B(1)(ii)(D), would be able to obtain one.

## Standing to challenge prohibitions based on Massachusetts Convictions

The Plaintiff concedes that, because his conviction took place "in any other state or Federal jurisdiction" rather than "in a court of the commonwealth", is not harmed by the identical prohibitions of M.G.L. Ch. § 131(d)(i)(D) and M.G.L. Ch. 140 § 129B(1)(i)(D) but for the geography. Left for another day shall be the challenge by the unfortunate soul who is convicted in a Massachusetts court of a non-violent misdemeanor involving the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed.

## CONCLUSION

For the reasons stated above, and in his motion for summary judgment, Dr. Morin respectfully requests the court grant his motion for summary judgment and deny the Defendant's cross-motion.

Dated: February 12, 2016

Alfred Morin,
By His Attorney,

/s/ J. Steven Foley
J. Steven Foley
11 Pleasant St #100
Worcester MA 01609
BBO: 685741
508-754-1041
508-739-4051 (fax)
JSteven@attorneyfoley.com

CERTIFICATE OF SERVICE

I, J. Steven Foley, hereby certify that this document filed through the ECF system was served on all counsel of record.

Date: February 12, 2016                     /s/ J. Steven Foley
                                            J. Steven Foley

17