COMMONWEALTH OF MASSACHUSETTS
UNITED STATES DISTRICT COURT

DOCKET NO. 4:15-CV-40048-TSH

ALFRED MORIN,

    Plaintiff

v.

MARK K. LEAHY, in his official capacity as NORTHBOROUGH CHIEF OF POLICE,

    Defendant

**PLAINTIFF'S RULE 56.1 REPLY TO DEFENDANT MARK K. LEAHY'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND SAID DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

    Plaintiff Alfred Morin hereby submits his Local Rule 56.1 Reply to Defendant Mark K. Leahy's Opposition to Plaintiff's Motion for Summary Judgment and Said Defendant's Cross-Motion for Summary Judgment.

Table of Contents

I.    The Defendant Town of Northborough's argument. ............................................................... 1

II.   Northborough's Interpretation of Monell. ............................................................................. 1

III.  Defendant Leahy Was A State Actor in the Present Matter. ............................................... 3

IV.   Chief Leahy's denial of Dr. Morin's Firearm Applications Is Not Immune to §1983 Action Under Monell and Related Cases. .................................................................................... 4

CONCLUSION ................................................................................................................................. 5

## TABLE OF AUTHORITIES

### Cases

**Battista v. Clarke**, 645 F.3d 449 (1st Cir. 2011) .......................................................................... 2
**Cepero-Rivera v. Fagundo**, 414 F.3d 124 (1st Cir. 2005) ............................................................ 1
**City of St. Louis v. Praprotnik**, 485 U.S. 112 (1988) .................................................................. 5
**Ex Parte Young**, 209 U.S. 123 ...................................................................................................... 2
**Goldstein v. Galvin**, 719 F.3d 16 (1st Cir. 2013) .......................................................................... 2
**Jett v. Dallas Independent School District**, 491 U.S. 701 (1989) ............................................... 5
**McMillian v. Monroe County,** 520 US 781 (1997) ....................................................................... 3
**Monell v. Department of Social Services**, 436 U.S. 658 (1978) .......................................... 1, 2, 5
**Pembaur v. Cincinnati**, 475 U.S.469 (1986) ................................................................................. 5
**Vaqueria Tres Monjitas, Inc. v. Irizarry**, 587 F.3d 464 (1st Cir. 2009) ..................................... 3

### Statutes

42 U.S.C. § 1983 ..................................................................................................................... 1, 2, 3, 5
M.G.L. c. 140, § 131 ........................................................................................................................ 1, 4
M.G.L. c. 41 § 97A ............................................................................................................................ 5

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**ARGUMENT**

I.   The Defendant Town of Northborough's argument.

The Defendant town of Northborough's (hereinafter "Northborough") can be summarized succinctly:

> That Dr. Alfred Morin (hereinafter "Dr. Morin") fails "..to establish that his injury was caused by a municipal policy or a custom so as to state a viable claims under claim under **Monell v. Department of Social Services**, 436 U.S. 658, 691 (1978)…" (See Northborough's Memorandum p. 6.) "[A] municipality may face liability only for its own policies or customs that result in constitutional injury and whether an act or omission can be attributed to a municipality does not depend on the form of relief sought." (See Id. p. 7, emphasis in the original.)

II.   Northborough's Interpretation of Monell.

Federal law makes a state official liable if he acts under color of law and "subjects, or causes to be subjected," any person "to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Liability extends to "those individuals who participated in the conduct that deprived the Plaintiff of his rights." **Cepero-Rivera v. Fagundo**, 414 F.3d 124, 129 (1st Cir. 2005). Here, the Complaint alleges that Defendant Police Chief Leahy acted pursuant to a state law – M.G.L. c. 140, § 131 – and that in so doing, he denied Dr. Morin a federal constitutional right – specifically, his Second Amendment right to keep and bear arms. The Complaint thus states a valid claim against Defendant Chief Leahy under 42 U.S.C. § 1983.

The Complaint also states a valid claim against Northborough. The claims against Chief Leahy all concern actions he took in his official capacity as the Northborough Police Chief. It is

1

well established that when a lawsuit challenges a person's actions in an official capacity, it "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." **Goldstein v. Galvin**, 719 F.3d 16, 23 (1st Cir. 2013) (quoting **Monell v. Dep't of Soc. Servs. of N.Y.**, 436 U.S. 658, 690 n.55 (1978)).  Thus, because the Complaint states a valid claim against Chief Leahy in his official capacity, it likewise states a valid claim against the Town of Northborough, on whose behalf Chief Leahy was acting.  And because the lawsuit seeks only prospective injunctive and declaratory relief, rather than money damages, there is no need for "the separate roles of individual defendants [to] be sorted out." **Battista v. Clarke**, 645 F.3d 449, 452 (1st Cir. 2011).[1]

Defendants' claim that they are not liable because they executed a non-discretionary state law. The plaintiff disagrees. This argument fails to distinguish between retrospective claims for money damages and prospective claims for declaratory and injunctive relief.  While it is true that municipal defendants cannot be held liable to pay money damages merely because they executed a state law in a manner that violated the federal Constitution, ever since the Supreme Court's 1908 decision in **Ex Parte Young**, 209 U.S. 123, plaintiffs have been able to use § 1983 to "proceed against state officers in their official capacities to compel them to comply with federal law." **Vaqueria Tres Monjitas, Inc. v. Irizarry**, 587 F.3d 464, 478 (1st Cir. 2009).  The limitation is that these lawsuits can only seek "prospective injunctive or declaratory relief," rather than "retroactive monetary damages or equitable restitution."  (Id.) Of course, the Complaint here seeks only prospective injunctive and declaratory relief – not retroactive monetary damages.

---

[1] The Dr. Morin does seek attorney fees, but this is, strictly speaking, not retroactive (prior to the litigation) damages.

III.     Defendant Leahy Was A State Actor in the Present Matter.

Dr. Morin has repeatedly attempted to make clear that the Licensing Authority in this case was Chief Leahy. Dr. Morin is certainly are not suing the municipality for declaratory relief on the basis of respondeat superior. It is well established that a local government or county employee can act as an arm of the state. See, e.g**., McMillian v. Monroe County,** 520 US 781 (1997). As stated by the Supreme Court in **McMillian**, a suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent. Id. at 1737 Note 2 (emphasis added). In determining whether a local official is acting as a local or state agent, the Court determined that

> Our inquiry is guided by two principals. First, the question is not whether [the officer] acts for Alabama or Monroe County in some categorical, "all or nothing" manner. Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue. . .. Thus, we are not seeking to make a characterization of Alabama sheriffs that will hold true for every type of official action they engage in. We simply ask whether [the officer] represents the State or the county when he acts in a law enforcement capacity. . .. Second, our inquiry is dependent on an analysis of state law. This is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy. But our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law. Id. at 1737.

The Licensing Authority's powers do not flow from the Police Chief or from the Town in which he is the Authority, but directly from the state's legislative and police power through its licensing statute. The Commonwealth's Executive Office of Public Safety ("EOPS") also acknowledges that local Licensing Authorities are the entity that determines if a resident applicant should obtain a state gun license. EOPS specifically directs apply for or renew a LTC or FID card at their local police department Exhibit A, EOPS Website Firearms Forms and Applications. Furthermore, the application for a LTC or FID specifically directs the applicant to

3

"Submit this form and direct any questions to your local police department" Exhibit B, Massachusetts Resident LTC/FIC/Machine Gun Application"

Additionally, Northborough does not direct its residents to seek a licensing decision from the state, but instructs them instead to bring documents to their Chief of Police. Nor does a resident appeal a denial of a gun license by a local Licensing Authority to the state, but the statutory appeal right goes directly to the District Court. See M.G.L. c. 140, § 131. As is evident from the above, local Licensing Authorities, i.e. the Chief of Police, is the Commonwealth's designated arm for accepting, processing, and issuing or denying firearms licenses. The Licensing Authority is a direct creation of state statute, not a local bylaw, and derives its decision making and enforcement authority directly from the state legislative and police power.

Defendant Chief Leahy did not receive a denial from any other state agency for Dr. Morin's license application, because Chief Leahy made the decision himself that Dr. Morin was not eligible for an LTC and denied the application.

As established by the admitted facts, the Chief denied Dr. Morin's application for a LTC. Clearly, the Chief utilized his authority to determine on his own, without receiving a directive from Northborough or the state, whether Dr. Morin was statutorily disqualified from receiving a license. This reality of how the Massachusetts licensing scheme actually works in practice would be no surprise to anyone remotely familiar with it.

IV. Chief Leahy's denial of Dr. Morin's Firearm Applications Is Not Immune to §1983 Action Under Monell and Related Cases.

A municipality, county, or other local government entity is a "person" that may be sued under § 1983 for constitutional violations caused by policies or customs made by its lawmakers or by "those whose edicts or acts may fairly be said to represent official policy." **Monell**, 436

4

U.S. at 694, 98 S.Ct. at 2037–38. A municipality may be held liable for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision. **Jett v. Dallas Independent School District**, 491 U.S. 701, 737 (1989); **City of St. Louis v. Praprotnik**, 485 U.S. 112, 123 (1988) (plurality opinion); **Pembaur v. Cincinnati**, 475 U.S.469,480 (1986). The Chief of Police in Northborough is the Town's policymaker for law enforcement issues, and has authority over the property and officers in his command. M.G.L. c. 41 § 97A. He is also the designated Licensing Authority for the Northborough. Chief Leahy could only have made a local policy decision when he rejected Dr. Morin's application for An LTC. If the state licensing statutes operate as Northborough argue, then there was no state statute or authority authorizing Chief Leahy to make this unilateral policy decision not to approve the application. This local decision, then, changed the denial of the license from a state act into a purely local act

## CONCLUSION

The Plaintiff respectfully asks the court to grant him summary judgment on against Northborough and deny the Northborough's cross-motion.

February 26, 2016

/s/ J. Steven Foley

J. Steven Foley, Esq.
Attorney At Law
11 Pleasant St., Suite 100
Worcester, MA 01609
(508) 754-1041
BBO # 685741
www.attorneyfoley.com

**CERTIFICATION**

5

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and served via email on this 26 of February, 2016..

/s/ J. Steven Foley